PAUL BODISH, claimant-appellant, v. FISCHER, INC., employer, and BITUMINOUS CASUALTY CORPORATION, insurance carrier, appellees.

No. 51613.

(Reported in 133 N.W.2d 867)

MARCH 9, 1965.

Klauer, Stapleton & Ernst, of Dubuque, for appellant.

Betty, Neuman, Heninger & McMahon, of Davenport, for appellees.

LARSON, J.—Claimant-employee appeals from a judgment of the district court affirming the industrial commissioner's denial of benefits claimed under chapters 85 and 85A, Code, 1958, as a result of injury or disease sustained in 1959 while he was employed as an operating engineer in defendant's cold storage plant at Dubuque, Iowa.

This appeal presents the same two questions propounded to the district court, i.e., was there a fact dispute on the causation, and was there sufficient competent evidence to sustain the commissioner's finding thereon? See sections 86.29 and 86.30, Code, 1958, now 1962. The trial court answered both questions in the affirmative, and we must agree.

██ I. The above-mentioned provisions of the Code have been repeatedly construed as making the commissioner's findings of fact conclusive on appeal where the evidence is in dispute *or* where reasonable minds may differ on the inferences fairly to be drawn from the disclosed facts. In other words, if the evidence presents a question which should be submitted to a jury, if trial were to a jury, then the court is bound by the commissioner's findings. Hemker v. Drobney, 253 Iowa 421, 424, 425, 112 N.W.2d 672, 673, 674, and citations; Wagner v. Otis Radio & Electric Co., 254 Iowa 990, 993, 119 N.W.2d 751, 752; Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 347, 107 N.W.2d 102, 106, and citations. In cases, however, where the

facts are not in dispute and different inferences could not reasonably be drawn therefrom, it becomes a question of law and the court is not bound by the commissioner's findings or conclusions. Pribyl v. Standard Electric Co., 246 Iowa 333, 67 N.W.2d 438; Elliott v. Wilkinson, 248 Iowa 667, 670, 81 N.W.2d 925, 927, and cases cited.

Since this appeal involves a review of the evidence heard by the commissioner, one or two other well established general rules should be first noted. It is the commissioner, not the court, who weighs the evidence and his findings will be broadly and liberally construed and to uphold, rather than defeat, his decision. Hemker v. Drobney and Wagner v. Otis Radio & Electric Co., both supra; Nicks v. Davenport Produce Co., 254 Iowa 130, 134, 115 N.W.2d 812, 815, and citations; 100 C. J. S., Workmen's Compensation, section 757, page 1145, section 763(2), pages 1175 to 1177.

The commissioner being the fact finder, the rule announced in Staley v. Fazel Bros. Co., 247 Iowa 644, 647, 75 N.W.2d 253, would be applicable. We said therein that the findings are to be broadly and liberally construed, rather than narrowly or technically. "In case of doubt or ambiguity they will be construed to uphold, rather than to defeat, the judgment."

Claimant, of course, had the burden of showing by a preponderance of the evidence before the commissioner that he suffered the claimed injury or disease as a result of his contact with spilled ammonia while working at defendant's plant, and our question is not whether there is sufficient evidence to warrant a decision the commissioner did not make, but whether there is sufficient evidence to warrant the decision he did make. Olson v. Goodyear Service Stores, 255 Iowa 1112, 1115, 125 N.W.2d 251, 253, and citations; Bocian v. Armour & Co., 244 Iowa 304, 306, 56 N.W.2d 900, 901, 902, and citations; Hemker v. Drobney, supra. However, in determining the correctness of the commissioner's decision we are required to consider the evidence in the light most favorable to claimant. Volk v. International Harvester Co., 252 Iowa 298, 301, 106 N.W.2d 649. Therefore, it becomes necessary for us to examine the testimony

to see for ourselves if there is sufficient competent evidence to support the commissioner's decision.

II. Appellant contends the evidence as to causation is not in conflict, that the testimony of the medical experts and the fair inferences to be drawn therefrom establish as a matter of law the ultimate fact that his skin condition was caused by contact with escaping ammonia at defendant's plant on the afternoon of December 5, 1959. We have frequently pointed out that in the absence of an admission by his adversary it is not often a party who has the burden on an issue establishes his claim as a matter of law. Staley v. Fazel Bros. Co., supra, 247 Iowa 644, 649, 75 N.W.2d 253; Ruble v. Carr, 244 Iowa 990, 993, 59 N.W.2d 228, 230, and citations. Nevertheless, appellant contends he established causality by the positive testimony of Dr. Christian E. Radcliffe and thus placed the burden upon appellees to establish a conflict in the medical testimony on causality, that no conflict appears, because the fair inferences of appellees' expert's testimony supports the causation opinion of Doctor Radcliffe. We must admit this was an ingenious argument, but obviously it did not persuade the commissioner or the district court and it fails to persuade us. The claimant's burden does not shift, the commissioner was not compelled to accept the opinion of this medical expert, and the fair inferences to be drawn from all the medical testimony, the histories related by claimant to them, and other evidence surrounding appellant's claimed injury, may well support a finding that his skin condition arose independently of the industrial contact with ammonia.

III. The material evidence introduced, with the exception of that surrounding the opinions expressed by the medical experts, is somewhat in dispute. Claimant, age 50, was on duty at defendant's cold storage plant on the afternoon of December 5, 1959, when a plug in a storage tank sprung a leak and allowed anhydrous ammonia to drip or spill onto the floor, where it vaporized into a wet fog. Claimant said he tried to stop the leak, but was overcome by the fumes and left the area in distress. He called Mr. Donald C. Meyer, the company vice-president, who came to the plant and fixed the leak after considerable liquid ammonia had escaped. Appellant furnished him very little help

and said it was due to a defective gas mask, although it was later used by a cleanup man without complaint. Nevertheless, claimant said his contact with the liquid and gas had so distressed him that he became ill and his skin was burned and irritated. He worked the rest of that day and the next, but on the second day, his day off, he consulted and gave a history of this exposure to the company doctor, Dr. Anthony G. Pfohl. Doctor Pfohl treated him until December 10 and then referred claimant to Dr. Robert L. Barton, a skin specialist in Dubuque. Doctor Barton diagnosed the condition as eczematoid dermatitis and prescribed steroid drugs and soothing baths. When claimant obtained little relief, Doctor Barton referred him to Dr. Ruben Nomland, a specialist at the State University Hospitals in Iowa City, who after a superficial examination and an examination of the referral letter, advised claimant the condition was not industrially connected and sent him home. In the meantime Doctor Pfohl had continued to treat claimant and, after claimant lost his job at the plant September 22, 1960, sent him to Doctor Radcliffe, a skin specialist at the State University of Iowa, as a state patient. Doctor Barton joined in this referral. Doctor Radcliffe took over after October 1960 and concluded the patient had generalized exfoliative dermatitis triggered off by exposure to ammonia at defendant's plant, that it made him more receptive to contacting pneumonia, which claimant had in April 1961, and prescribed steroid drugs which eventually stabilized the affliction but did not cure it. It appears the history claimant gave each doctor was not the same, but Doctor Radcliffe testified his opinion of causation would be the same regardless of a previous history of dermatitis, i.e., that it occurred as a result of the December 5th contact with ammonia at defendant's plant.

IV. True, we have said whether an injury or disease has a direct causal connection with the employment or arose independently thereof is "essentially within the domain of expert testimony." Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 383, 101 N.W.2d 167, 171, and citations. However, the weight to be given such an opinion is for the finder of fact, and that may be affected by the completeness of the premise given the expert and other surrounding circumstances.

522

■ When an expert's opinion is based upon an incomplete history, the opinion is not necessarily binding upon the commissioner or the court. It is then to be weighed together with the other disclosed facts and circumstances, and the ultimate conclusion is for the finder of the fact. Burt v. John Deere Waterloo Tractor Works, 247 Iowa 691, 699, 73 N.W.2d 732, 736; Nellis v. Quealy, 237 Iowa 507, 512, 21 N.W.2d 584; Hinrichs v. Davenport Locomotive Works, 203 Iowa 1395, 1397, 214 N.W. 585, 586. In the Hinrichs case there was a disagreement between the medical experts as to whether a cataract was caused by an injury to the eye. They agreed "that a cataract might result from an injury to the eye", and we held it was the province of the industrial commissioner to accept the testimony of the experts "as seemed to him most consistent with all the testimony, and of the greater credibility." In the Nellis v. Quealy case we said: "Not only must Dr. Martin's testimony be taken in its entirety, but all other testimony bearing upon the causal connection between the injury and the disability must be considered in determining whether the commissioner was justified in his finding * * *."

When Doctor Radcliffe was given claimant's history ten months after the incident of December 5, 1959, claimant neglected to tell him of his prior skin troubles. Doctor Barton, who had treated claimant in 1952 for a skin disorder diagnosed as eczematoid dermatitis, was not told of any ammonia contact when he was consulted in December 1959. He was first advised of that contact in a telephone conversation with claimant in March 1960. There was also evidence claimant had an 18-month bout with skin trouble in 1944. Doctor Pfohl was consulted on September 14, 1959, and found claimant suffering from a rash on his legs and elbow which he diagnosed as exfoliative dermatitis. Claimant says this was a result of splashing ethyl gasoline at the plant, but there was no medical testimony it was so caused. Clearly, the inferences that may be drawn from these facts are not favorable to claimant.

Doctor Barton testified notes taken by him December 24, 1959, state: "Careful history reveals patient had atopic eczema from infancy until the age of fourteen. On two subsequent occa-

sions he has had severe recurrences of the same disease, each of which lasted eighteen months at a time. * * * The patient has had asthma, hay fever, and hives, in addition to the severe dermatitis he presents now."

Considering this history and his knowledge of the patient, Doctor Barton said he could not reach a conclusion with any reasonable degree of medical certainty that claimant's condition was produced or caused by exposure to anhydrous ammonia, ethyl gasoline, or any other agent used at the place of his occupation. On the other hand, he testified there were a large number of diseases that could produce eczematoid dermatitis, such as exposure to drugs taken internally for other conditions, psoriasis, applications of ointments and certain serious diseases in the family group of lymphoblastomas, which includes leukemia, lymphosarcoma, mycosis fungoides, and Hodgkin's disease. He said that "any severe chemical burning [as claimed by appellant] would be present for several weeks after the incident" and that when he examined claimant six days after the ammonia incident he did not look like he had been burned. There is much more explanation as to why Doctor Barton could not say claimant's condition was due to this anhydrous ammonia, but this will suffice to illustrate a basic difference in the medical experts' opinions on causation.

V. We think this evidence alone is sufficient to uphold the commissioner's decision, but even if claimant's view is accepted that there is no dispute in the facts, different inferences may be drawn therefrom. The commissioner's finding is conclusive if there is a conflict in the evidence *or* where reasonable minds may differ on the inferences fairly to be drawn from the facts. Hemker v. Drobney, supra, 253 Iowa 421, 423, 112 N.W.2d 672, and citations. The testimony here is such that reasonable minds could differ on the proper inference as to causation. The inference of long affliction with dermatitis is more than mere speculation, and we think it generated a factual question of whether this attack occurred prior to the December 5th incident at defendant's plant and thus had no connection with that occasion. The commissioner so found, and we think that conclusion is fully supported by the evidence and permissible inferences to be drawn therefrom.

VI. A considerable portion of appellant's brief is devoted to a discussion of the legal effect of inferences. Reference is made frequently to the learned opinion in United States v. United States Gypsum Co., 67 F. Supp. 397, 449, with which we find no complaint. However, if we understand claimant's contention correctly, he maintains the commissioner or any fact-finding body must, when there are two or more reasonable inferences possible, consider the inference controlling which is consistent with any positive evidence of the ultimate fact in issue. Thus appellant argues, since Doctor Barton says he does not know the cause of the dermatitis, he does not rule out the industrial cause, but infers it was a possible cause, which is consistent with Doctor Radcliffe's positive opinion of the cause. So considered, there would be no conflict in the medical testimony nor could there be a difference on the proper inferences to be drawn from their testimony. Reference is then made to our rule announced in Williams v. Cohn, 201 Iowa 1121, 1126, 206 N.W. 823, that we are "committed to the rule that evidence which is uncontradicted by fact or inference deducible therefrom is taken as true, as a matter of law." While this rule is correct and proper, we are not convinced that the only inference the commissioner had available to him from this testimony, even from the doctors alone, is that the cause was industrial. The inference is equally as strong that the cause was from several other sources, such as ointments he admitted using, drugs he said he took, and other prior unexplained attacks for which he had sought medical aid.

VII. We have carefully examined this record and the authorities cited by appellant. Clearly, claimant has a painful and disabling skin condition. There was, we think, evidence from which the commissioner could have found claimant suffered a compensable injury at defendant's plant on December 5, 1959, or at least an aggravation of an existing skin disease, but he did not. Since his finding was that claimant failed to establish, by a preponderance of the evidence, the industrial incident as the cause of his dermatitis disease or disability, and since that finding is sustained by substantial evidence and reasonable inferences

drawn therefrom, we have no choice but to affirm the trial court's judgment.—Affirmed.

All JUSTICES concur.