CECIL O. MUSSELMAN, appellant, v. CENTRAL TELEPHONE COMPANY, employer-appellee, and ZURICH INSURANCE COMPANY, insurance carrier-appellee.

No. 52671.

(Reported in 154 N.W.2d 128)

354

NOVEMBER 14, 1967.

Ulstad & Guinan, of Fort Dodge, for appellant.

Bastian, Beisser & Carlson, of Fort Dodge, for appellees.

RAWLINGS, J.—Claimant-employee contends he sustained personal injury arising out of and in the course of his employment with defendant.

He appeals from a judgment of the district court affirming the Iowa Industrial Commissioner's denial of benefits.

Three errors are assigned as a basis for reversal: (1) There is no substantial evidence supporting the conclusion claimant did not receive an injury arising out of and in the course of his employment; (2) as a matter of law claimant proved an injury so incurred; and (3) the commissioner and arbitrator did not make findings of fact which support a denial of benefits.

I. Claimant's status as an employee of defendant at the time here concerned is not disputed.

■ The deputy commissioner, and on review the commissioner, both found that at time of the subject incident claimant was clearly within the course, or scope, of his employment. As this court explained in Reddick v. Grand Union Tea Co., 230 Iowa 108, 116, 296 N.W. 800, "in the course of employment" means, at a place where it was the duty of an employee to be, at a time when he was properly doing his work, and while in the performance thereof.

The sole issue presented is whether the condition upon which claimant bases right to relief "arose out of his employment".

Stated otherwise, did claimant establish, by the necessary quantum of proof, a causal connection between the conditions under which work was performed and the resulting injury, i.e., did an injury follow as a natural incident of the work? Reddick v. Grand Union Tea Co., supra.

See also Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 346, 107 N.W.2d 102, and 17 Iowa Law Review 355–364.

■■ II. Sections 86.29 and 86.30, Code 1962, have been repeatedly construed as making the commissioner's findings of fact conclusive on appeal where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the disclosed facts. If the evidence presents a question which should be submitted to a jury, if trial were to a jury, then the courts are bound by the commissioner's findings.

In cases, however, where the facts are not in dispute and

different inferences could not be reasonably drawn therefrom, it becomes a question of law and the court is not bound by the commissioner's findings or conclusions.

■ It is the commissioner, not the court, who weighs the evidence and his findings will be broadly and liberally construed to uphold, rather than defeat, his decision.

■ Of course, a claimant has the burden of showing by a preponderance of the evidence, before the commissioner, the injury arose out of and in the course of employment.

■ *Our question is not whether there is sufficient evidence to warrant a decision the commissioner did not make, but rather whether there is sufficient evidence to warrant the decision he did make.*

In support of the foregoing see Bergen v. Waterloo Register Co., 260 Iowa 833, 151 N.W.2d 469, 471; Nelson v. Cities Service Oil Co., 259 Iowa 1209, 146 N.W.2d 261, 263; Crees v. Sheldahl Telephone Co., 258 Iowa 292, 139 N.W.2d 190, 192, 193; and Bodish v. Fischer, Inc., 257 Iowa 516, 518, 519, 133 N.W.2d 867.

III. An examination of the testimony is necessary in order to determine if there is sufficient competent evidence to support the commissioner's decision.

At time of hearing before the deputy commissioner claimant was 64 and had been employed by defendant 33 years.

He claims to have been injured January 11, 1963. At that time he was working as a stockman, ordering stock, putting it away, taking care of material for installers' trucks, carrying mail, and collecting money from pay stations. In carrying out this work assignment he at times lifted containers weighing up to approximately 40 pounds. Whenever heavier lifting was required other employees would assist him. He was doing no such heavy lifting at the time of the alleged injury.

In fact it is his contention that at the time here concerned he was leaning against a wall for balance while putting an overshoe on the left foot with his right hand, gave it a jerk, then noticed a sharp knifelike pain on the left side of the lower back. The next day he had difficulty in getting out of bed,

could not sit down, had trouble in walking, and did not go to work. Two days later he was able to and did resume work.

February 14 he complained of pain to the plant superintendent. With the assistance of this superintendent an injury report was prepared.

From February 18 to March 18, he was absent, and upon returning worked again until May, performing the same duties as before.

The record discloses claimant was treated in 1945 by Doctor Schwendemann, a chiropractor, for a sore back. The same year he was given treatments by Doctor Lungren, an osteopath, because of the same difficulty. In 1961, Doctor Holmes, a chiropractor, was called upon to treat him for a sore back resulting from starting a mower.

Following the overshoe incident, and on January 15, 1963, claimant again saw Doctor Holmes. He told the doctor that January 11, 1963, while putting on the overshoe, he felt a pain in the lower back. The trouble was diagnosed as a lumbosacral sprain, with pain radiating into hip and down the left leg. This doctor said the pain, such as related to him by claimant, could be caused from shoveling snow or any form of twisting if severe enough. X rays revealed a slight curvature caused by muscle spasm, but no abnormality in alignment of vertebra. It was not recommended claimant engage in bowling activities. Doctor Holmes' opinion was, claimant would not be able to sit in one position very long, but could possibly do light work. He did not know whether claimant had vascular insufficiency of the lower extremities. As stated by him, a doctor takes the information given by a patient as to an existing condition and from that draws his own conclusions.

Doctor Stitt, a physician specializing in orthopedic problems, saw claimant February 14, 1963. Claimant then said he had been making a mail delivery, leaned over to put on some boots, and noticed some discomfort in his back which became quite severe the next day. Based on history given, this doctor was under the impression claimant had an acute lumbar muscle sprain, possibly a disc protrusion producing some radicular pain in the left leg, but only observation and time would help

decide the matter. The claimant was not examined for any vascular insufficiency. Doctor Stitt also stated bowling and twisting would cause a flare-up of back pain and soreness. He had no knowledge as to claimant's bowling but did advise him that activity would certainly aggravate the condition. He was of the opinion claimant could do light work, but could not lift 50- or 60-pound objects. X rays taken disclosed conditions essentially normal with slight curvature but no disc trouble. He also said getting in and out of cars and road hunting would aggravate claimant's back condition.

Doctor Summers, a practicing physician for 20 years, an instructor and assistant professor at the University of Iowa, engaged in practice as an orthopedic surgeon, specializing in neurology, also testified. He twice examined claimant.

The first time, March 31, 1964, the overshoe incident was reported to this doctor and he was told that when walking claimant experienced pain in the left hip, found it necessary to sit on his right buttock most of the time, and pain in both thighs, experienced when walking, subsided when he stopped. Claimant also said he had been impotent the last four or five years, with complete loss of sexual powers. X rays were taken. The doctor then thought it possible the pain described was of a radicular type such as that attributed to a herniated disc in the lower lumbar spine. However, he believed the objective findings supporting such a diagnosis were minimal, that the symptoms might in large part be due to poor circulation in claimant's lower extremities, and further study should be made.

At time of the second examination by Doctor Summers, May 25, X rays were again taken. He was then unable to feel any pulse in either of claimant's lower extremities. There was a bruit or abnormal noise in each groin. An oscillometer was used to measure circulation in the legs. Both limbs were examined and the excursion was ½ unit to 1 unit where normally it should be 6 to 7 units. This was deemed compatible with poor circulation in the lower extremities. He got no achilles reflex on either side and elicited no foot reflexes or plantar responses. The X rays disclosed extensive calcification in the walls of the abdominal aorta. At time of this second examina-

tion there was an appearance of pain with exercise which was relieved with rest. Doctor Summers deemed this, and claimant's history of impotency, as significant.

In addition the X rays showed signs of early arthritis and narrowing of the vertebral spaces between lumbar 5 and sacral 1. There was tenderness in the sciatic notch area on the first examination which has something to do with blood vessels. This orthopedic neurologist stated, pain in the hip is a very common finding in vascular insufficiency, mimicking a herniated disc, and it is often very difficult to differentiate the two.

After the second examination there was *no doubt in his mind claimant's difficulty was due to vascular insufficiency in the lower extremities and in no way due to any injury.* He found evidence claimant had suffered a heart attack years before which is an actual vascular disease. His testimony discloses this disease does not develop instantaneously, that it had been progressing for some time and suddenly made its appearance at the time of the overshoe incident. He said when claimant was putting on the overshoe he had a stroke in the blood vessel to the buttock area, one of the branches to the sciatic nerve, and there comes a time when it is the straw that breaks the camel's back; that claimant could have been standing in church holding a heavy Bible and the same thing could have appeared.

■ IV. This court has previously held, if a claimant had a preexisting condition or disability, aggravated, accelerated, worsened or "lighted up" by an injury which arose out of and in the course of employment resulting in a disability found to exist, he would be accordingly entitled to compensation. See Nicks v. Davenport Produce Co., 254 Iowa 130, 134, 135, 115 N.W.2d 812, and citations.

■■ However, a disease which under any rational work is likely to progress so as to finally disable an employee does not become a "personal injury" under our Workmen's Compensation Act merely because it reaches a point of disablement while work for an employer is being pursued. It is only when there is a direct causal connection between exertion of the employment and the injury that a compensation award can be

360

made. The question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause. Littell v. Lagomarcino Grupe Co., 235 Iowa 523, 529, 17 N.W.2d 120, and citations. See also California Notion & Toy Co. v. Industrial Accident Comm., 59 Cal. App. 225, 210 P. 524; and annotations, 19 A.L.R. 101; 28 A.L.R. 206; 80 A.L.R. 1304.

V. Claimant contends the conclusion he did not receive an injury as alleged is not supported by substantial evidence. and as a matter of law he proved otherwise. As previously stated the burden was upon him to prove his case by a preponderance of the evidence, and we have frequently pointed out that absent an admission by his adversary it is not often a party having that burden establishes it as a matter of law.

The commissioner was not compelled to accept the opinion of any testifying medical expert. The fair inferences to be drawn from all the medical testimony, the histories related by claimant to the various doctors, and other evidence surrounding the alleged injury may well support a finding his back condition arose independently of any work related incident.

In support of the foregoing see Bodish v. Fischer, Inc., supra, loc. cit., 257 Iowa 520.

VI. Furthermore this court has held, in determining whether an injury or disease has a direct causal connection with the employment, or arose independently thereof, it is essentially within the domain of expert testimony, and the weight to be given such an opinion is for the finder of the facts. When an expert's opinion is based upon an incomplete history it is not necessarily binding on the commissioner or the court. It is then to be weighed, together with the other facts and circumstances, the ultimate conclusion being for the finder of the fact. See Bodish v. Fischer, Inc., supra, loc. cit., 257 Iowa 521, 522.

VII. Without repeating the factual situation here involved we are satisfied it discloses a conflict in the evidence, or that reasonable minds could differ on the inferences fairly to be drawn from the facts.

Even if the testimony of Doctor Summers to the effect he entertained no doubt but that claimant's difficulty was due to vascular insufficiency in the lower extremities in no way due to an injury be disregarded, it still remains the evidence is such that reasonable minds could differ on the proper inference to be given as to causation. The inference of long affliction with vascular insufficiency is here more than mere speculation, and a factual question, determinable by the commissioner, was generated as to whether claimant's back condition had any connection with the overshoe incident. His finding on that issue, adverse to claimant, is fully supported by the evidence and we have no good cause to disagree.

VIII. Furthermore there is no merit in claimant's contention the commissioner and arbitrator did not make findings of fact or give rational reasons supporting their respective decisions.

Section 86.25, Code 1962, provides: "The decision of the industrial commissioner in any case on review before him shall be in writing, filed in his office, and shall set forth his findings of fact and conclusions of law."

As heretofore stated the commissioner, not the court, weighs the evidence, and his findings are liberally construed to uphold rather than defeat the decision.

There is no such deficiency in the findings of the commissioner as to nullify his conclusions.

IX. Having determined the commissioner's findings are sustained by substantial evidence and reasonable inferences drawn therefrom, we have no alternative but to uphold the trial court's judgment.—Affirmed.

All JUSTICES concur.