Mable McDOWELL, surviving spouse of Robert G. McDowell, Appellee,

v.

TOWN OF CLARKSVILLE, Iowa, and Hawkeye Security Insurance Company, Appellants.

No. 2–56738.

Supreme Court of Iowa.

May 19, 1976.

Mosier, Thomas, Beatty, Dutton & Braun, Waterloo, for appellants.

Hagemann & Hagemann, Waverly, and Shepard & Shepard, Allison, for appellee.

Heard before MOORE, C. J,, and Le-GRAND, UHLENHOPP, REYNOLDSON, and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal in a workmen's compensation case presents a question of causation.

Robert G. McDowell, a truck driver, had a cerebral aneurysm (a permanent, abnormal dilation of a blood vessel resulting from disease of the vessel wall). The fact-finder could also find McDowell had high blood pressure.

McDowell was a member of the volunteer fire department of Clarksville, Iowa. On June 26, 1962, he was at home and heard the fire alarm. He drove to the fire station, where he learned that a flood had inundated a farmhouse. As instructed, he used a hydraulic end loader to fill a dump truck with sand. He drove the truck to the house and with some difficulty backed it into the driveway. Assisted by other workers, he then filled sandbags for approximately 20 minutes, alternately holding bags and shoveling. He also helped load the sandbags into a Jeep and a small boat, for transfer to the farmhouse.

McDowell then went to a firetruck at the site to call over a two-way radio for more sand. While talking on the radio he mumbled he did not feel well, and collapsed unconscious.

McDowell died the next morning at The University of Iowa Hospitals at Iowa City from massive bleeding (subarachnoid hemorrhage), following rupture of his cerebral aneurysm.

McDowell's widow, the claimant, asks workmen's compensation from Clarksville and its insurer (to whom we will refer collectively as employer). The parties have narrowed the case to one question: whether

McDowell's activities which we have described constituted a proximate cause of the rupture of the aneurysm and resulting death.

Both sides as well as the trial court agree that an issue of fact exists on that question. A Deputy Industrial Commissioner first heard the claim. In addition to proof of the circumstances we have related, at that hearing claimant offered the deposition of R. A. Caulkins, a medical doctor who attended McDowell at University Hospitals. Dr. Caulkins is board-certified in psychiatry and neurology. His original deposition testimony was not strong for claimant.

At the hearing, the employer offered the depositions of two medical doctors, William F. McCormick, who supervised the autopsy and examined decedent's brain, and Norbert Enzer. Dr. McCormick, board-certified in pathology and neuropathology, teaches at The University of Iowa College of Medicine. Dr. Enzer is board-certified in pathology and clinical pathology. Dr. McCormick testified in his deposition that he could not be reasonably certain of any causal relationship between trauma, stress, strain, or violence and the rupture of an aneurysm, and that no causal relationship existed between present blood pressure and the likelihood of rupture. The employer asked Dr. McCormick his opinion on the causation issue in a hypothetical question incorporating the facts in evidence. The doctor answered, "I think it is impossible to say with reasonable medical certainty that there is any causal relationship between rupture of the aneurysm and the hypothetical situation."

When the employer put the hypothetical question to Dr. Enzer, by deposition, that doctor responded, "It is my opinion that the activities described in your question did not have anything to do with the rupture of the aneurysm." He stated, "The relationship of stress, including emotional psychic excitement, these are, I think, within the area of sheer speculation," and that "[T]he aneurysm of the group that we are dealing with in this case, located in the anterior communicating artery, is remote from the effects of stressful pressure and also remote from even direct violence."

Before the original hearing closed, the parties stipulated that claimant could ask additional questions of Dr. Caulkins within 60 days. Claimant accomplished this by written interrogatories. She then made the interrogatories and answers a part of the record before the Deputy Commissioner.

Dr. Caulkins' responses to the written interrogatories were stronger than his original deposition testimony. In answer to a hypothetical question incorporating the evidence, he stated, "In my opinion the rupture of Mr. Robert McDowell's aneurysm was directly related to the activities of the day, namely shoveling sand, filling sandbags and loading sandbags while hurried and under the stress of a natural disaster (flooding)." He also stated, "In my opinion it is most likely that the rupture of the aneurysm found on the postmortem examination was directly related to the effort of shoveling sand and loading sand with haste and under duress." He stated that in his opinion "it is probable that the patient would be alive today had he not worked in the described way with the volunteer fire department." He quoted a medical publication containing this statement: "The relationship of environmental events to the onset of SAH [subarachnoid hemorrhage] has been considered. In one-third of the cases, SAH occurred during sleep or repose, and in another one-third it occurred during random activity. Nonetheless, certain specified events showed a higher frequency of association than might be expected. Prominent among those were lifting and bending, emotional strain, coitus and elimination."

The Deputy Commissioner found as a fact that claimant had established causation, and awarded compensation. The employer petitioned for review by the Industrial Commissioner. See § 86.24, Code 1973.

The Commissioner held a hearing upon the record before the Deputy and the additional testimony of F. Miles Skultety, a medical doctor whom the employer produced as a witness. Dr. Skultety was one of the authors of the first chapter of the medi-

cal publication Dr. Caulkins quoted. Dr. Skultety is a board-certified neurosurgeon who heads the section of neurosurgery at the University of Nebraska. The employer put the hypothetical question to him embracing the evidence in the case and asked him the causation question which the previous doctors had answered. He responded, "I don't believe there was a relationship." Amplifying, he testified, "I think that the rupture of an aneurysm is as of the present moment, to the best of my knowledge, and the knowledge that I have gained from such readings as I do and observations of patients, that it is a random event that occurs or can occur at any time and that at the present moment there is no evidence to indicate that what the patient is doing at the time precipitates the rupture of the aneurysm." In answer to the inquiry, "In your opinion, Doctor, is there any relationship to strenuous physical activity or emotional stress and the rupture of an aneurysm?" he responded, "Not in my opinion."

In his decision the Commissioner copiously quoted various parts of the testimony on causation. With reference to Dr. Caulkins' testimony, the Commissioner quoted from the weaker, earlier statements, but did not mention the stronger, later answers to written interrogatories. The Commissioner stated that claimant had the burden to prove her claim by a preponderance of the evidence. He then held, "Under the evidence presented in this record, the claimant has failed to carry her burden of proof." He found as a fact that McDowell did not sustain an injury arising out of and in the course of the employment, and he therefore denied compensation.

Claimant appealed to district court on the record before the Commissioner. §§ 86.26, 86.29, Code 1973. On September 13, 1973, the district court filed its decision. The court stated that there was "a direct conflict in the medical testimony, taking into consideration the answers to the interrogatories and all of the physicians who testified were eminently qualified in their field." It held that the Commissioner applied two erroneous rules of law: (1) claimant made a

prima facie case, but the Commissioner did not then require the employer to go forward with its burden of proof, and (2) the Commissioner did not consider the whole record on review, specifically claimant's written interrogatories to Dr. Caulkins and his answers. The court reversed the Commissioner's decision and granted claimant judgment for compensation, medical and funeral expense, interest, and costs. The employer appealed.

■ Obviously a question of fact existed on the issue of causation, and when a question of fact exists the Commissioner's finding on the question is binding on the courts. *Anderson v. Oscar Mayer & Co.,* 217 N.W.2d 531 (Iowa); *Musselman v. Central Tel. Co.,* 261 Iowa 352, 154 N.W.2d 128. But rules of law applied by the Commissioner are open to examination by the courts. *Hoenig v. Mason & Hanger, Inc.,* 162 N.W.2d 188 (Iowa). The question is whether the Commissioner applied erroneous rules of law.

I. The district court stated that the Commissioner applied an erroneous rule on the burden of proof. The court held that claimant's prima facie case placed "the burden upon the Defendant-Employer to go forward with his burden of proof and meet the claimant's prima facie case" and the Commissioner erred in not thus placing the burden on the employer and in ruling rather that claimant had the burden of proving her claim. The court cited *Nelson v. Cities Service Oil Co.,* 259 Iowa 1209, 146 N.W.2d 261.

In *Nelson* this court stated at pages 1213–1214, 146 N.W.2d at 263–264:

This court has consistently held it is a claimant's duty to prove by a preponderance of the evidence he or his decedent was a workman or employee within the meaning of the law and he or his decedent received an injury which arose out of and in the course of employment.

.   .   .

And, if a compensation claimant establishes a prima facie case *the burden is then upon defendant to go forward with the evidence and overcome or rebut the case made by claimant.* He must also

**908**

establish by a preponderance of the evidence any pleaded affirmative defense or bar to compensation. (Italics added.)

The district court relied on the italicized language.

The words "burden of proof" may refer to the burden of producing evidence or the burden of persuading the fact finder. See McCormick, Evidence (2d ed.) § 336 at 783–785. Apparently the district court in reversing the Commissioner's decision was not thinking of the burden of producing evidence, for the employer did produce evidence. The district court must have been of the view that the other burden of proof, the burden of persuasion, passed to the employer when claimant made a prima facie case, and that the Commissioner erred in thinking claimant continued to have the burden of persuasion.

The burden of persuasion, however, does not shift. McCormick, Evidence (2d ed.) § 336 at 784. If the proponent of a proposition generates a fact issue and his adversary adduces no proof, the adversary simply takes the risk of having the fact finder find that the proponent of the proposition sustained his burden of persuasion. Id. § 338 at 791–792 ("the proponent will not be entitled to the direction of a verdict in his favor on the issue, but rather the court will leave the issue to the decision of the jury. . . . If [the proponent] had remained silent at the outset he would irrevocably have lost the case on this issue, but the only penalty now applied to his adversary is the risk, if he remains silent, of the jury's finding against him, though it may find for him.").

These principles are subject to the caveat in workmen's compensation cases that the fact finder must not "arbitrarily or totally reject" testimony; "he has the duty to weigh it and determine its credibility." *Langford v. Kellar Excavating & Grading, Inc.,* 191 N.W.2d 667, 669 (Iowa). Moreover, the fact finder's findings "must be sufficiently certain to enable a reviewing court to ascertain with reasonable certainty the factual basis on which the administrative officer or body acted." *Catalfo v. Fire-*

*stone Tire & Rubber Co.,* 213 N.W.2d 506, 509 (Iowa) (also involving the uncontradicted expert testimony rule, which is not involved here).

Applying these principles to the present case, claimant had the burden of persuasion on the issue of causation, and that burden did not shift. *Sondag v. Ferris Hardware,* 220 N.W.2d 903 (Iowa); *Bodish v. Fischer, Inc.,* 257 Iowa 516, 520, 133 N.W.2d 867, 869 ("claimant's burden does not shift"). In apparently holding that the Commissioner was wrong in failing to pass the burden of persuasion to the employer, the court erred. The court's first ground for its result is thus untenable.

II. The district court held further that in disregarding Dr. Caulkins' answers to the written interrogatories, the Commissioner failed to weigh and consider all the evidence. The problem here relates to the *Langford* requirement of considering all the evidence.

Obviously an administrative agency cannot in its decision set out verbatim all the testimony in a case. Obviously also, if the agency quotes some testimony, a losing party should not be able, ipso facto, to urge successfully that the agency did not weigh all the other evidence. But under the particular record before us we are concerned that the Commissioner may well have overlooked Dr. Caulkins' answers to the written interrogatories. The Commissioner set out Dr. Caulkins' weaker original testimony— and then referred to this, if we understand the decision correctly, as Dr. Caulkins' strongest testimony. Any reference to Dr. Caulkins' later, stronger answers is conspicuously absent. The record indicates to us that the Commissioner may well have been unaware of those interrogatories and answers. This unawareness may have resulted from claimant's filing the interrogatories and answers after the first hearing had concluded. The district court's second conclusion therefore appears well founded.

In view of the second conclusion, the district court had to make a disposition

of the case. This it did by finding the facts for claimant and awarding compensation. The proper disposition, however, was not for the court to find the facts but rather to return the case to the Commissioner for decision on the record already made. See *Sondag v. Ferris Hardware,* 220 N.W.2d 903 (Iowa).

We thus remand the case to the Commissioner to weigh and consider Dr. Caulkins' answers to the written interrogatories, if the Commissioner did not so weigh and consider them originally, and to render a supplemental decision. If the Commissioner did weigh and consider those answers originally, he should so recite in his supplemental decision, and his original finding on causation and judgment will stand. But if he did not weigh and consider those answers originally, he should weigh and consider them on remand together with the other evidence and then render a finding on causation in his supplemental decision, with judgment accordingly. We do not intimate, of course, what in such event the finding and judgment should be. See *Bodish v. Fischer, Inc.,* 257 Iowa 516, 520, 133 N.W.2d 867, 869.

REVERSED AND REMANDED.