Larry PITZER, Appellant,

v.

ROWLEY INTERSTATE and Home
Insurance Company, Appellees.

No. 92–776.

Supreme Court of Iowa.

Oct. 20, 1993.

Rehearing Denied Nov. 23, 1993.

Dennis L. Hanssen of Hopkins & Huebner, P.C., Des Moines, for appellant.

Dorothy L. Kelley of Jones, Hoffmann & Huber, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and LAVORATO, JJ.

CARTER, Justice.

Workers' compensation claimant, Larry Pitzer, initiated the present action, seeking to increase the benefits awarded by the industrial commissioner. The district court heard the case pursuant to Iowa Code section 17A.19 (1989) and affirmed the commissioner's award in all respects. The court of appeals reversed the district court's order and remanded the case to the agency for a more favorable award of healing period benefits. After considering the arguments presented, we vacate the decision of the court of appeals and affirm the judgment of the district court.

Claimant, an over-the-road truck driver, sustained a back injury on May 3, 1984, while alighting from his cab. His injury ultimately required cervical disc surgery that was performed on January 29, 1985. A second surgical procedure related to the injury was performed on January 14, 1986, to correct a bone spur. On April 9, 1986, Dr. Levin, the orthopaedic surgeon who performed claimant's second surgery, concluded that claimant had reached maximum medical healing.

Dr. Levin informed claimant that he could return to a light duty position offered by his employer. At that time, claimant's employer

did not have a light duty position available. Because claimant was still experiencing some discomfort from his injuries at the time of the April 19, 1986 evaluation, Dr. Levin recommended a course of treatment at the pain management clinic of the University of Wisconsin. That facility was located not far from claimant's home in Boscoville, Wisconsin.

In May of 1986, claimant began a six-month program at the University of Wisconsin pain clinic. There, he was treated with various pain suppressing modalities, physical therapy, injections, and medications. On November 18, 1986, his supervising physician, Dr. Hoffert, reported that his condition had "plateaued." Claimant's care was terminated, and it was suggested the time had arrived for a determination of the extent of his permanent industrial disability.

On December 6, 1986, claimant, who had not resumed gainful employment for his prior employer or elsewhere, was evaluated by Dr. James Agre. Dr. Agre was associated with Professional Rehabilitation Services, Ltd. of Madison, Wisconsin, an organization that provides rehabilitation services and determines disability ratings for workers' compensation claimants pursuant to AMA guidelines. Dr. Agre found that claimant could not lift, push, or pull weights in excess of four pounds, that he could not crawl, and could only reach above his head with the right extremity. Dr. Agre determined that claimant could not drive a truck on over-the-road hauls. He rated claimant's functional body-as-a-whole impairment at ten percent.

Sometime in October 1987, claimant was seen at the chronic pain management program in Columbia Hospital, Milwaukee, Wisconsin. There, he was under the supervision of John R. Galbraith, Ph.D. Further discussion of claimant's involvement in the Columbia Hospital program will ensue in connection with our consideration of the legal issues presented.

At the time of claimant's administrative hearing on September 28, 1988, he had still not returned to any gainful employment. A deputy industrial commissioner found claimant to have sustained a twenty percent permanent partial disability as a result of a work-related back injury. The deputy further found, based on Dr. Hoffert's report, that claimant's injury "reached a plateau" on November 18, 1986. Based on that finding, the deputy terminated healing period benefits as of the latter date and ordered 100 weeks of weekly permanent disability benefits to run from November 19, 1986.

The deputy industrial commissioner also approved payment of substantial amounts to claimant's medical suppliers, but denied payment of medical benefits to the chronic pain management program at Columbia Hospital and Dr. Galbraith. On review of the deputy's order, the industrial commissioner found that all of claimant's treatment for pain management at Columbia Hospital was compensable. The employer and insurance carrier do not challenge that finding. The industrial commissioner modified the deputy's order to reflect the allowance of these additional medical benefits but otherwise affirmed that order as to claimant's benefit entitlement.

In challenging the final agency order in the district court, the sole issue raised was whether the extended treatment claimant received at the pain management program at Columbia Hospital necessitated a "running award" of healing period benefits at least through the period of that treatment. The district court rejected that contention and affirmed the final order of the agency. The court of appeals, however, believed the record demonstrated that through participation in the Columbia Hospital program substantial improvement in claimant's condition was anticipated. It found that the agency's contrary finding was not supported by substantial evidence. Based on this premise, the court of appeals concluded that healing period benefits should continue throughout the period of referral to the Columbia Hospital pain clinic. For reasons that we discuss, we do not agree with the court of appeals' evaluation of the record on these issues. Other facts that bear on the issues will be discussed in our consideration of the legal claims that are presented.

I. *Length of Healing Period Compensation as Fixed by Iowa Code Section 85.34(1) (1989).*

■ The payment of a healing period benefit is governed by Iowa Code section 85.-

34(1), which provides that, when a permanent partial disability is established, such weekly benefit shall begin on the date of injury and shall continue

> until the employee has returned to work or it is medically indicated that significant improvement from the injury is not anticipated or until the employee is medically capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of the injury, whichever occurs first.

*Id.*[1] In the present case, it appears without dispute that the claimant had not returned to work and was not able to return to substantially similar employment on a date some fifty-two months after his injury. As a result, the issue before the industrial commissioner, in applying the language of section 85.34(1), was when it became "medically indicated that a significant improvement from the injury [was] not anticipated."

There have been no decisions of this court concerning the length of the healing period under either the present statute or earlier versions of section 85.34(1). The lack of controversy in applying prior versions of the statute is perhaps explained by the fact that, under statutes in force from 1949 until 1973, the maximum length of time for which healing period benefits were payable was established as a fixed percentage of the period for which permanent partial disability benefits were payable.[2]

Beginning in 1973, the healing period statute was altered by removing any reference to a statutory maximum and providing that the healing period was to run until the injured employee returned to work, was able to return to similar employment, or recuperated from the injury. 1973 Iowa Acts ch. 144, § 8. The court of appeals has decided two cases involving the length of the healing period after the statutory maximum was removed. In *Armstrong Tire & Rubber Co. v. Kubli,* 312 N.W.2d 60 (Iowa App.1981), that court indicated that "[t]he healing period may be characterized as that period during which there is reasonable expectation of improvement of the disabling condition." *Id.* at 65. In *Thomas v. William Knudson & Son, Inc.,* 349 N.W.2d 124, 125 (Iowa App.1984), the court of appeals determined that medical evidence of anticipated improvement may extend the healing period even if it is later demonstrated that the injury stabilized much earlier than anticipated. *Id.* at 126.

The employer and insurance carrier in the present case argue that the proper time for ending the healing period is when the underlying back injury that produced the claimant's pain had stabilized. From that point on, they argue, pain management, although perhaps beneficial to the claimant in some respect, was not anticipated to change the extent of permanent industrial disability. In support of that contention, they refer to a leading workers' compensation treatise in which it is stated "[t]he persistence of pain may not itself prevent a finding that the healing period is over ... provided that the underlying condition is stable." 1 C. Arthur Larson, *The Law of Workmen's Compensation* § 57.12(c) (1989).

■ We are not persuaded that the persistence of pain after the underlying injury has stabilized may in no instance extend the healing period. We believe that the stability of condition referred to in Larson's treatise is a

---

**1.** Healing period compensation is a description given to temporary workers' compensation weekly benefits that precede an allowance of permanent partial disability benefits. Iowa Code § 85.-34(1). Ordinarily, the determination of what label to place on temporary benefits must await the determination of whether some degree of permanent disability has been sustained by the claimant. For a discussion of the distinction between healing period compensation and temporary total disability benefits, see Arthur C. Hedberg, Jr., and Phillip Vonderhaar, *An Overview of the Iowa Workers' Compensation Act,* 30 Drake L.Rev. 809, 825–26 (Iowa 1991). The historical derivation of the healing period benefit, first enacted as 1949

Iowa Acts ch. 62, § 1, is discussed in Note, *Workers' Compensation Benefits in Iowa,* 45 Iowa L.Rev. 867, 880–83 (1960).

**2.** Beginning in 1949, the maximum healing period benefit was fixed at 25% of the period for which weekly permanent partial disability benefits were payable or 20 weeks whichever was lesser. 1949 Iowa Acts ch. 62, § 1. Later it was provided that, in "unusual cases" where the actual healing period exceeded the statutory maximum, the industrial commissioner could extend the healing period for up to 60% of the period of permanent partial disability benefits. 1965 Iowa Acts ch. 106, § 2.

stability in industrial disability. Consequently, an anticipated improvement in continuing pain or depression, if medically indicated, may extend the length of the healing period if a substantial change in industrial disability is also expected to result. If, however, it is not likely that further treatment of continuing pain, however soothing to the claimant, will decrease the extent of permanent industrial disability, then continued pain management should not prolong the healing period.

The court of appeals' statement in *Thomas*, 349 N.W.2d at 126, that anticipated improvement of condition will extend the healing period even if the condition ultimately stabilizes sooner than anticipated, is only correct as it applies to hindsight correction of a medical prognosis that was sound when given. It should not be viewed as standing for the proposition that *any* medical opinion indicating anticipated improvement will extend the healing period in the face of credible contrary evidence.

The court of appeals' conclusion in the present case, that substantial improvement in claimant's condition was anticipated, appears to have been based on the statements contained in the February 25, 1988 letter to claimant's counsel from Dr. Galbraith of Columbia Hospital pain clinic. That letter stated in part:

> We agree that [Larry Pitzer] is a very appropriate candidate for our program and the probability of successful rehabilitation is high. It is our opinion that this treatment is necessary either directly or indirectly because of the injury he sustained on May 3, 1984, and because of the subsequent treatments and inactivity....
>
> We fail to understand the difficulty in getting authorization for treatment for this unfortunate gentleman. He has suffered a great deal and has become depressed, discouraged and angry. These factors may have complicated his treatment in the past but are natural consequences of what he has been through and will respond to appropriate treatment.

The industrial commissioner could properly have viewed Dr. Galbraith's letter with some skepticism in view of the empirical data in claimant's clinical history at the University of Wisconsin pain clinic. After claimant's underlying back injury had stabilized on April 9, 1986, efforts were made at that clinic to further reduce his residual pain with an eye toward lessening his degree of permanent industrial disability. At the end of a six-month period, no noticeable progress towards that goal had been realized. The industrial commissioner chose to terminate the healing period at this point.

We conclude that claimant's clinical history at the University of Wisconsin pain clinic constitutes substantial evidence in the record to support the industrial commissioner's finding that, after November 18, 1986, it was not medically indicated that he would obtain significant improvement in his industrial disability from future pain management programs. This conclusion is buttressed by the fact that it is not made clear in Dr. Galbraith's letter just how the Columbia Hospital program would benefit claimant. It is quite possible that claimant could have obtained some worthwhile benefits from that program through proposed coping strategies for residual pain, and yet not have lessened his degree of permanent industrial disability. All of this was for the industrial commissioner to sort out, and given the conflicting and uncertain evidence as to anticipated improvement in claimant's disability, the decision that he rendered may not be overturned on judicial review.

II. *Sufficiency of Industrial Commissioner's Explanation of Why Substantial Improvement in Claimant's Condition Was Not Anticipated.*

■ In seeking to uphold the decision of the court of appeals, claimant argues that the industrial commissioner failed to give adequate reasons in his decision for rejecting the conclusion of Dr. Galbraith that claimant's condition would be benefited from continued participation in the Columbia Hospital pain management program. This contention is founded, in part, on our observation in *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506 (Iowa 1973), that the commissioner has a duty "to state the evidence he relies upon and specify in detail the reasons for his conclusions." *Id.* at 510. In a later

opinion, we indicate that *Catalfo* only requires that the reviewing court be able to determine with reasonable certainty the factual basis on which the administrative officer acted. *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 908 (Iowa 1976). The *McDowell* case recognized that an administrative agency cannot in its decision set out verbatim all testimony in a case. Nor, when the agency specifically refers to some of the evidence, should the losing party be able, ipso facto, to urge successfully that the agency did not weigh all the other evidence. *Id.* In the present case, we have no problem in identifying the factual basis for the industrial commissioner's determination of the legal issues surrounding the length of the healing period.

We have considered all issues presented and conclude that the industrial commissioner's determination of the length of the healing period was supported by substantial evidence in the record considered as a whole and thus should not have been disturbed on judicial review. We vacate the decision of the court of appeals, which did disturb those findings and conclusions. We affirm the judgment of the district court upholding the commissioner's decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**