# IN THE COURT OF APPEALS OF IOWA

No. 14-0044
Filed March 11, 2015

**STEVEN J. BELL JR.,**
Petitioner-Appellant,

**vs.**

**3E, a/k/a ELECTRICAL & ENGINEERING
CO., and TRAVELERS INDEMNITY/CT,**
Respondents-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Lawrence P.

McLellan, Judge.


An employee appeals a judicial review decision affirming the award by the

workers' compensation commissioner.   **AFFIRMED.**


Mark Soldat of Soldat, Parrish-Sams & Gustafson, P.L.C., West Des

Moines, for appellant.

James M. Ballard of Ballard Law Firm, P.L.L.C., Waukee, for appellees.


Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

Employee Steven Bell challenges a finding by the Iowa Workers' Compensation Commissioner that he suffered a five percent industrial disability following a workplace fall. Bell claims the commissioner erred in not considering his possible career as a firefighter in determining his lost earning capacity. Bell also claims the commissioner failed to make the credibility findings required by Iowa Code section 17A.16 (2011). Bell further argues the commissioner prematurely decided the extent of permanent disability.

The commissioner adopted the deputy's decision, which explained the deputy's reasoning and pointed to relevant evidence in the record supporting the conclusions. Substantial evidence supports the commissioner's findings of five percent industrial disability and maximum medical improvement. Accordingly, we affirm.

## I. Background Facts and Proceedings

Steven Bell Jr. was working as an "inside sales" representative for Electrical & Engineering Co. (3E). He was on his way to lunch on March 19, 2010, when he slipped and fell in the 3E lobby. At the time of the fall, Bell was forty-two years old.

The fall resulted in a left wrist sprain, a trauma-induced ganglion cyst, lower back strain, and a contusion to the left shoulder and elbow. On March 22, 2010, Bell saw Dr. Richard McCaughey, D.O. Dr. McCaughey diagnosed Bell with "residual tenderness" in his left elbow, wrist, shoulder, and right lower back. An MRI on March 23, 2010, revealed "arthritic changes with a bony hypertrophy

and soft tissue hypertrophy at the acromioclavicular joint" along with a "tiny inferior surface tear involving the supraspinatus tendon anteriorly." Bell returned to work in late March, restricted from using his left arm. Bell saw Dr. Barron Bremner, D.O. for his wrist and shoulder. Dr. Bremner recommended physical therapy and predicted Bell "should have a full recovery."

Bell underwent surgery, performed by Dr. Bremner, to remove the cyst from his wrist in early May and continued physical therapy for his wrist and shoulder. After leaving physical therapy in mid-May 2010, Bell returned at the end of the month complaining of increased back pain. Dr. McCaughey ordered an MRI for Bell's back. The MRI, done on June 22, 2010, revealed no problems or "abnormalities of the lumbar spine." On June 24, 2010, Dr. McCaughey released Bell to work without restrictions.

On June 4, 2010, Bell filed a petition with the workers' compensation commission. A deputy commissioner held a hearing on May 4, 2011, and filed her decision on July 21, 2011. The deputy found Bell's accident left him with a five percent industrial disability. On October 15, 2012, the commissioner adopted the findings of the deputy. Bell sought judicial review, and on July 9, 2013, the district court affirmed the commissioner on all grounds.

Bell now appeals.

## II. Scope and Standards of Review

Our review is governed by Iowa Code chapter 17A. *See Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014). Under chapter 17A, the district court acts in an appellate capacity to correct errors of law. *Id.* In reviewing the

district court's decision, we apply the standards of chapter 17A to determine whether we reach the same conclusions as the district court. *Id.* at 889. If we do, we affirm; if not, we reverse. *Id.*

We have authority to affirm the agency action or remand to the agency for further proceedings. Iowa Code § 17A.19(10). We may "reverse, modify, or grant other appropriate relief" if we determine the agency's ruling was "not supported by substantial evidence" or was otherwise legally flawed. *Id.* On appeal, Bell alleges error under the following paragraphs of Iowa Code section 17A.19(10)—(b), (c), (f), (i), (j), (m), and (n).

Substantial evidence is defined as "the quantity and quality of evidence that would be deemed sufficient by a . . . reasonable person, to establish the fact at issue." Iowa Code § 17A.19(10)(f)(1). We give significant deference to the agency's credibility findings. *Lange v. Iowa Dep't of Revenue*, 710 N.W.2d 242, 247 (Iowa 2006). As reviewing courts, we can only grant relief if the agency's factual determination "is not supported by substantial evidence in the record before the court when that record is reviewed as a whole." *Id.*

Because Bell's challenge to the commissioner's industrial disability determination depends on the application of law to facts, we will not disturb the ruling unless it is "irrational, illogical, or wholly unjustifiable." *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 526 (Iowa 2012).

### III.  Analysis

#### A. Lost Earning Capacity

Bell first argues the commissioner erred in calculating the extent of his industrial disability because the deputy's decision rejected evidence in the record comparing his pre-injury and post-injury capacity to be a firefighter.

Industrial disability measures an injured worker's lost earning capacity. *Second Injury Fund v. Shank*, 516 N.W.2d 808, 813 (Iowa 1994).  Relevant factors for determining disability include the employee's functional impairment, age, intelligence, education, qualifications, experience, and the ability of the employee to engage in employment for which he is suited.  *Id.*  Considering these factors, the focus is not solely on what the worker can and cannot do; the focus is on the ability of the worker to be gainfully employed.  *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 104 (Iowa 1985).

The agency record included evidence concerning Bell's aspirations to be a firefighter.  Bell received his degree in fire and science technology from Des Moines Area Community College (DMACC) in 1997.  He passed both the written and physical agility examinations required to serve as a firefighter.  His name appeared on the hiring list for the Des Moines Fire Department, but he was never offered a firefighter position.  Bell served as a volunteer firefighter in Grimes for two years.  Bell has not applied for any firefighter positions since 1997.  After 1997, Bell worked in counter sales for 3E, then in 2005 Bell moved to inside sales.  The inside sales job requires Bell to enter orders into his computer at his desk in the office.

On appeal, Bell focuses on a footnote in the deputy's decision and adopted by the commissioner, which is somewhat dismissive of the proof Bell had the capacity to be a firefighter. That footnote stated:

> There was a great deal of evidence on [Bell's] desire to someday get back to being a firefighter. He claimed that this was his dream position yet between 1997 when he quit because of the birth of his son and prior to his injury in 2010, [Bell] never applied for another position, either permanent or volunteer. Because of this, [the deputy commissioner] did not consider [Bell's] industrial disability to include firefighter positions. If anything, the multitude of evidence regarding [Bell's] desire to be a firefighter was an attempt to exaggerate his claim and incorrectly inflate [Bell's] loss of employability.

Bell argues this footnote shows the commissioner misapplied the legal principles governing industrial disability determinations. He claims the workers' compensation statute does not require an employee to have pursued a particular position to establish he or she has the capacity to perform it. Bell contends the commissioner failed to consider evidence Bell had the capacity to generate more earnings as a firefighter than the income he received from working in sales for 3E. Bell requests we reverse and remand for the commissioner to consider his earning capacity as a firefighter.

On judicial review, the district court decided Bell "provided no objective proof that he was capable of becoming a firefighter immediately prior to his 2010 injury. Therefore, the court finds that the commissioner properly considered the fact of Bell's minimal work experience as a firefighter when he chose not to include any lost earning capacity from employment as a firefighter."

We agree with the district court's analysis. The commissioner noted Bell's DMACC coursework and his work history as a volunteer firefighter. The

commissioner also observed that Bell "quit the volunteer firefighter position to spend more time with his son" in 1997 and had not worked in a physically demanding position since then. Bell presented no objective evidence he was still capable of being a firefighter; twelve years had passed between Bell taking the exams and his workplace injury. The commissioner properly considered Bell's fitness for employment as a firefighter and determined the evidence did not show he had the current ability to work in that field.

### B. Section 17A.16

Bell next argues the arbitration decision drafted by the deputy commissioner and adopted by the commissioner failed to satisfy Iowa Code section 17A.16 because it did not separate its findings of fact from its conclusions of law and did not offer credibility findings concerning the witnesses.

Section 17A.16 requires the commissioner to give "findings of fact and conclusions of law, separately stated." Iowa Code § 17A.16. The provision also mandates that the commissioner's factual findings "if set forth in statutory language, shall be accompanied by a concise and explicit statement of underlying facts supporting the findings." Iowa Code § 17A.16. This mandate is consistent with "the commissioner's duty as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 259–60 (Iowa 2012).

We do not hold the commissioner to technical compliance with this provision as long as we can determine where finding of facts end and conclusions of law begin or otherwise can track the commissioner's analytical

process. *See Dodd v. Fleetguard, Inc.*, 759 N.W.2d 133, 137 (Iowa Ct. App. 2008). If we can work backward from the agency's ultimate outcome, we will not find error under section 17A.16. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 909 (Iowa 1987).

The agency decision is divided into a finding-of-fact section and a conclusion-of-law section. The decision logically sets forth the commissioner's thought process. The decision gives specific findings on Bell's credibility and while other credibility findings are not explicit, they can be discerned from the direction of the analysis. *See Second Injury Fund v. Braden*, 459 N.W.2d 467, 471 (Iowa 1990) (finding credibility determination inhered in ruling when order contained no specific discussion of credibility). On this record, we find the agency complied with section 17A.16. *See Bridgestone/Firestone, Pac. Emp'rs Ins. v. Cathy Accordino*, 561 N.W.2d 60, 62 (Iowa 1997).

### C. Maximum Medical Improvement

In his final assignment of error, Bell argues the issue of permanent disability was not ripe for adjudication because the doctors did not find he had reached maximum medical improvement (MMI) for his back injury. MMI refers to stabilization of the worker's condition or at least a finding the condition is not likely to abate in the future despite medical treatment. *See Dunlap v. Action Warehouse*, 824 N.W.2d 545, 557 (Iowa Ct. App. 2012). Before a worker has achieved MMI, only temporary benefits are available. *See Bell Bros. Heating & Air Conditioning v. Gwinn,* 779 N.W.2d 193, 200 (Iowa 2010).

Dr. John D. Kuhnlein, D.O. performed an independent medical examination (IME) of Bell on February 23, 2011. Bell asserts Dr. Kuhnlein "only indicated conditionally" that Bell had "reached maximum medical improvement for his back pain *without further treatment* on June 24, 2010, his last visit with Dr. McCaughey." Bell contends the commissioner's decision on permanent benefits violated the dictates of *Bell Bros.*, 779 N.W.2d at 201.

3E argues the commissioner's decision that Bell had reached MMI was supported by substantial evidence. Dr. Kuhnlein stated: "Mr. Bell reached maximum medical improvement for his upper extremity conditions on November 7, 2010, six months after surgery." Dr. Kuhnlein further opined Bell reached MMI for his back in June 2010. 3E asserts that when Dr. Kuhnlein made the statement "without further treatment" he was only referring to future treatment if Bell could not tolerate the back pain, not future healing.

Dr. Kuhnlein explained:

> I would only suggest a pain specialist if his current treatment is not adequate to treat his back pain. Mr. Bell may need to acknowledge that he will have some ongoing back pain for the foreseeable future, and, only if it is unmanageable, would he need to see a chronic pain specialist for his back.

We agree with 3E. Reading the full opinion of Dr. Kuhnlein, it is evident the expert believed Bell had reached MMI for his back injury and only suggested future treatment for pain management.

The commissioner granted future alternative care for any ongoing pain treatment. MMI and alternative care are not necessarily mutually exclusive. Our supreme court has decided ongoing pain does not extend the healing period if it

does not decrease the industrial disability. *Pitzer v. Rowley Interstate*, 507 N.W.2d 389, 392 (Iowa 1993). Here, the record shows any future treatments anticipated by Dr. Kuhnlein would be aimed at managing Bell's back pain. We find that in accordance with *Bell Bros.*, the question of permanent impairment was ripe for the commissioner's consideration.

**AFFIRMED.**