JACOB E. BROWN, Appellee, v. RATH PACKING COMPANY et al., Appellants.

No. 42234.

NOVEMBER 20, 1934.

Swisher, Swisher & Cohrt, for appellants.

Mears, Jensen & Gwynne, for appellee.

ALBERT, J.—The claimant, Jacob E. Brown, originally filed a claim in the industrial commissioner's office, claiming compensation from the defendants for total disability for an alleged injury caused by heat exhaustion. The matter was tried out before a deputy commissioner as arbitrator, and recovery was denied. On review, the industrial commissioner affirmed the arbitrator's decision, and on appeal to the district court the judgment of the industrial commissioner was reversed.

The general fact situation in substance is as follows: The claimant, Jacob E. Brown, who was about forty-three years of age, had been employed by the Rath Packing Company for a period of nine months. His work was hauling barrels, or tierces, between the cooper shop and the pickle room. In going from one place to the other he passed through a runway about fifty feet long, seven feet

wide, and eight feet high. On one side of this runway were located the vats where lard is rendered by a steam-heating process; on the other side was the brick wall of the cold storage building. On July 10, 1930, while engaged in his line of employment, Brown quit work and went home. He testifies that he just about half fainted away, and went all to pieces, about 1:30 o'clock of that day. His arms and legs ached, and "I had a place across my kidneys that bothered me like the dickens. I was tired all the night before that. I was sick to my stomach. I had diarrhea, running off at the bowels, intestinal flu, and everything else, I guess, and I sweat so at nights I couldn't sleep." The evidence shows that the temperature on that day, outside the building, was about 94 degrees, and the temperature in the runway was somewhat higher, possibly 10 degrees. Brown hauled these barrels on a truck, and passed back and forth through this heated runway from four to six or seven times an hour. His noon hour was from 11:45 to 12:15. About 12 o'clock he felt sick. He continued to work, however, until 1:30, when he went home, as above stated. A chiropractor was called shortly after he went home, who ministered to him until the 7th of August following. This chiropractor did not give evidence in the case. On the above date Dr. Page, his regular physician, attended him, and from then forward.

There is no dispute of the relation of employer and employee, and there is no question of the result of the physical condition of the claimant. The one question raised in the case is whether or not the district court was warranted, under the record, in reversing the decision of the industrial commissioner.

We have made many pronouncements in which we have said, in substance, that, where there is a conflict as to material matters, the finding of the industrial commissioner as to disputed facts is final and binding on the court. See Smith v. Soldiers' and Sailors' Memorial Hospital, 210 Iowa 691, 231 N. W. 490; Kyle v. Greene High School, 208 Iowa 1037, 226 N. W. 71; Daugherty v. Scandia Coal Co., 206 Iowa 120, 219 N. W. 65; and previous cases cited in the above cases. The trial in the district court is not a trial *de novo*. Upon the appeal to the district court, the case was submitted on the transcript as certified by the industrial commissioner. The plaintiff has the burden of establishing by a preponderance of the evidence the proximate causal connection between the injury received and the claimant's condition. Guthrie v. Iowa Gas & Electric

Co., 200 Iowa 150, 204 N. W. 225; Sparks v. Consolidated Indiana Coal Co., 195 Iowa 334, 190 N. W. 593; Smith v. Marshall Ice Co., 204 Iowa 1348, 217 N. W. 264.

With these rules in mind, we have carefully read the record in this case, and under the same but one conclusion can be reached, and that is that there is a conflict in the testimony on the question of whether or not there was any causal relation between the heated atmosphere in the runway where the claimant worked and his physical condition at the time the hearing was had before the commissioner, and this was a material issue in the case. So long, therefore, as there was a conflict on this question, the commissioner was justified in denying compensation, and the district court was not warranted in reversing the holding of the commissioner.

We do not set the evidence out *in extenso* because it could not establish a precedent on account of the fact that no two cases are alike on the fact situations, and therefore the record need not be burdened by so setting out the testimony.—Reversed.

EVANS, STEVENS, KINDIG, CLAUSSEN, ANDERSON, and DONEGAN, JJ., concur.

MITCHELL, C. J., dissents.

MITCHELL, C. J. (dissenting)—I find myself unable to agree with the majority's opinion, and therefore respectfully dissent.

In the majority's opinion they say:

"We have carefully read the record in this case, and under the same but one conclusion can be reached, and that is that there is a conflict in the testimony on the question of whether or not there was any causal relation between the heated atmosphere in the runway where the claimant worked and his physical condition at the time the hearing was had before the commissioner, and this was a material issue in the case. So long, therefore, as there was a conflict on this question, the commissioner was justified in denying compensation, and the district court was not warranted in reversing the holding of the commissioner."

There is of course no question, under the holdings of this court, that, if there is a conflict in the evidence, the findings of fact made by the commissioner are conclusive upon the court. Thus, in Flint v. Eldon, 191 Iowa 845, at page 848, 183 N. W. 344, 345, the court said:

"Therefore as to disputed facts, which do not go to the jurisdiction, a court is bound by the finding of the Commissioner. * * *

"Such findings stand upon the same footing as the finding of a judge or a verdict of a jury." ·

Where I disagree with the majority is that I cannot find any conflict in the evidence submitted to the commissioner. And so we must look to the record to ascertain the facts.

The claimant offered as witnesses besides himself three medical men, and the evidence of his wife and two of his fellow workmen. The appellant company offered only the testimony of their own foreman, and he testified in regard to general working conditions. Nowhere in the testimony of the foreman is there conflict with the testimony of the claimant's witnesses.

The first question that confronts us is whether or not the record shows without dispute that the claimant's disability was due to heat exhaustion. Who is best able to testify in regard to that? Certainly the medical men, who are familiar with the symptoms and the causes of heat exhaustion. The claimant offered the testimony of three outstanding doctors, who testified as follows:

Dr. R. T. Page testified: "Would say that it was due to heat exhaustion based upon the history of the case with no other way of explaining the following series of symptoms which he developed. Wheeling a truck alternately from cold to hot room would be more apt to cause heat exhaustion."

Dr. E. R. Shannon testified: "Claimant had all the classical symptoms of heat exhaustion. With the symptoms which are described, I would find no other hypothesis upon which to base his trouble other than the fact that he had passed into a hot room and from there into a refrigerated room."

Dr. R. B. Fields testified: "Would say claimant's present condition is probably due to heat exhaustion."

Thus we find that the physicians in this case were agreed that the symptoms and subsequent condition of the claimant were not due to other causes, but were attributable to heat exhaustion. And it is interesting to note that the appellant company did not see fit to present expert testimony to throw any doubt whatever upon the state of claimant's condition. True, some of the doctors are not positive in their opinions. But doctors seldom are or can be. These

were the conclusions of medical men, all of them of standing in the profession, and none of them impeached by the appellant company in any way. The opinions of these medical men cannot be ignored, and there is not, as I read the record, one word of evidence to dispute the testimony of these three physicians. In addition to this, the other testimony corroborates it.

Thus the record in my judgment shows that the claimant's disability was due to heat exhaustion, and, under the law of this state as laid down in the case of Belcher v. Des Moines Electric Co., reported in 208 Iowa 262, 225 N. W. 404, the claimant is entitled to recover if the heat exhaustion was caused by conditions under which the claimant was required to labor. Again, as I read the record, there is no dispute in regard to this matter. He was required under his employment to wheel a truck loaded with four or five barrels from the cooper shop, then outdoors, and then into this passageway, which was fifty feet in length, on one side of which were the lard-rendering works. Claimant was in good physical condition when he went to work. His fellow employee, who worked with the claimant on the day of the injury, testified that they wheeled the barrels from the cooper shop, four or five at a time, on a two-wheel truck, the barrels weighing sixty to seventy pounds apiece. Coming from the cooper shop to the pickle cellar, they would go out into the open, then through this inclosed passageway, then on to an elevator and down into the pickle room. On the day of the injury the thermometer registered 94°. There is no dispute in the record, all of the parties testifying to the fact that this narrow, inclosed passageway, due to the lard-rendering plant being on one side, was 20° to 40° warmer than the temperature outside. In other words, as they wheeled these barrels through this passageway, which was an inclosed, narrow room, fifty feet long, the thermometer registered in this passageway between 114° and 134°. Then from the narrow passageway they entered an elevator, which took them down into the pickle room, where the temperature dropped 40° or 50°, the pickle room being artificially cooled. Thus we see that this claimant's employment required him to wheel this heavily loaded truck from the outside, where the temperature was 94°, into a narrow, heated passageway, fifty feet in length, where the thermometer registered between 114° and 134°, and then down into a pickle cellar, where the thermometer dropped to 60° or to 70°. In other words, in making the five or six trips he made each hour, he

was required to work in rooms where there was a sudden change in the temperature. This, medical men say, will bring on heat exhaustion.

The only witness which the appellant company offered was the foreman, and his testimony is only of the general conditions. He stated that the temperature in the passageway was 10° to 20° higher than outside.

This court in the case of Reid v. Automatic Electric Washer Co., 189 Iowa 964, on page 982, 179 N. W. 323, 330, said:

"It 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. * * * The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

The fact that the claimant's employment in the case at bar subjected him to greater heat than the ordinary person is undisputed in the record. That he was suffering from heat exhaustion is the opinion of medical men of standing, three in number, and this testimony the appellant company did not see fit to controvert by expert testimony. The industrial commissioner was not entitled to turn from the positive evidence of three doctors that the injury was due to heat exhaustion and to infer instead that it was due to some remote illness. Doing so, he was entering the realm of speculation and conjecture, into which the medical witnesses declined to go. The burden of proving that his condition was due to heat exhaustion and caused by conditions under which he was required to work rested upon the claimant. He met this burden by presenting a record in which there is no evidence to contradict the testimony of those best able to know whether or not the injury was caused by

heat exhaustion—to wit:.the medical men. He presented a record which showed that he was required to work under conditions which would bring about heat exhaustion, and thus was entitled to the compensation provided for under the Workmen's Compensation Act.

In view of such a record, I believe the lower court was right, and I would affirm the judgment of the lower court.