LENA EVELAND, Appellee, v. NEWELL CONSTRUCTION AND MA-
CHINERY COMPANY; CHARLES E. NEWELL, operating under the
trade name and style of NEWELL CONSTRUCTION AND MACHINERY
COMPANY, Appellant.

No. 46641.

FEBRUARY 6, 1945.

REHEARING DENIED APRIL 6, 1945.

Dwight Krumboltz and Jordan & Jordan, all of Cedar
Rapids, for appellant.

Fisher & Fisher and John Randall, all of Cedar Rapids,
for appellee.

MULRONEY, J.—In Eveland v. Newell Constr. Co., 230 Iowa
644, 298 N. W. 883, we held H. R. Eveland was the defendant's
employee at the time he was injured on November 13, 1939. In
that case we affirmed the compensation award. When he died,
on March 25, 1943, his widow filed an application to reopen

the case, claiming his death was caused by the prior injury. Upon the reopening proceedings the commissioner held the workman's death was caused by the prior injury "in that complications resulting therefrom precipitated his demise." This decision was affirmed upon appeal to the district court. Upon appeal to this court the employer alleges error in the trial court's holding that there was sufficient competent evidence to support the commissioner's decision.

The record shows that the workman was injured on November 13, 1939, and taken to the hospital, where it was found he had a back injury and other injuries to his arm and eye. The record of medical testimony upon the former hearing was admitted in evidence. This record shows the testimony of Dr. Houser taken on March 8, 1940. He examined the workman in the hospital at the time of his injury and, testifying concerning the back injury, he stated:

"He had a compressed fracture of the second lumbar vertebra * * * He suffered paralysis of the bladder and bowels the first week [in the hospital] * * * We had him in the hospital at two different times. We sent him home shortly after the body cast was applied, and later he was brought back and at that time he was complaining of some disturbance in his left leg, but at my last visit [about a week prior to March 8, 1940] nothing was said about the leg, and I don't know."

Dr. F. E. Thornton, an orthopedic surgeon at the Iowa University Hospital, testifying in the reopening proceedings, stated he examined the workman at the University Hospital on January 31, 1940, and found: "* * * a healed compression fracture of the 2nd lumbar vertebra. * * * evidence of injury to the spinal cord with involvement of left lower extremity there being pressure muscle weakness * * *." He remained in the University Hospital long enough to obtain a spring back or support and then he returned to the hospital in February of 1941, when he was again examined by Dr. Thornton. At this time he had a limp on his left side. He returned to the hospital again in February 1943, and Dr. Thornton, who again examined him, stated:

"At that time the patient had a contracture of his right hip and knee. All motions in the right hip were acutely painful. Some swelling over the anterior aspect of his right hip. This mass was fluctuant, diagnosis of a soft tissue abscess was made. This was aspirated with a needle and 700 cc. of a whitish odorless pus was obtained. X-rays were taken of his hip and reflected no destruction, but pathology of the hip appeared and the diagnosis was made of a psoas abscess, which was coming from destruction of the 4th and 5th lumbar vertebrae by what is known as an osteomyelitis. * * * Mr. Eveland remained in the hospital on that occasion until March 13, 1943. During his stay in the hospital I continued to have charge of his case. Between the date of his admission in the hospital and March 13, 1943, the patient was in considerably run-down condition because of this infection in his lumbar spine. He was given blood transfusions, there being a total of seven given from the 2nd of February until the 13th of March. On various occasions the portion was aspirated; in other words a needle was inserted in this portion and the pus which was present was removed in this manner. Because the accumulation of pus was so great and could not be controlled by the aspiration, on the 17th of February, 1943, this soft tissue drainage psoas abscess was carried out. This was followed by very profuse drainage and the patient desired to go home because he felt he was not going to be able to survive his infection, and due to his request and his wife's request he was allowed to go home where he died some time around the 1st of March."

With respect to the cause of the workman's death, Dr. Thornton stated:

"The patient's immediate death was due to myocardial failure, a wearing out of the heart itself, but this was contributed [to] by the patient's osteomyelitis which he had in his lumbar vertebrae. * * * I would say that in all likelihood that the infection which the patient had in his lumbar spine when seen in 1943 was a secondary result of his original injury to that lumbar spine back in 1939, because it was when he originally fell and suffered a compression fracture and a traumatic myelitis

of the spinal cord. The infection was not primary. The infection although primary in the bone was set up by an accident that occurred before. In other words, that happened in the particular area of the spine [which] was weakened by previous traumatic accident. From an examination of the death certificate which is Plaintiff's Exhibit 3, and with my knowledge of this condition and treatment of his condition during the months he was in the hospital in 1943, I would say that his death was the result of the condition for which I treated him while he was in the hospital in 1943.''

Dr. Beardsley and Dr. Houser, general practitioners in Cedar Rapids, testifying for the employer, from personal examination of the workman and from the written examination report of Dr. Thornton, stated that in their opinion the original injury to the second lumbar vertebra could have no relation to the osteomyelitis in the fourth and fifth vertebrae and the resulting abscess.

The employer argues that Dr. Thornton's testimony was nullified because he said on cross-examination that his ''opinion would be different in the event that it should transpire that the facts were different on the matter of the infection.'' The argument is that Dr. Thornton did not know that the fourth and fifth lumbar vertebrae were not injured in the original accident; that it is definitely established, especially by the testimony of Dr. Houser, that only the second lumbar vertebra was fractured, and since the osteomyelitis did not develop in the second vertebra it could not be attributed to the accident. But the evidence of Dr. Thornton's first examination, made within three months after the accident, discloses that he found the healed compression fracture of the second lumbar vertebra. There is nothing in his testimony which would indicate that he based his conclusion of the cause of death on an assumption that the fourth and fifth vertebrae were also injured or fractured in the accident. In his first examination he also found evidence of injury to the spinal cord and it is significant that he mentions this as well as the fracture when tracing the infection cause back to the accident.

We see nothing in the record save a possible dispute among

208

the medical experts. The finding of the industrial commissioner is in accord with the opinion of the orthopedic surgeon. The conflict in evidence was for the commissioner to decide. Reynolds v. George & Hoyt, 230 Iowa 1267, 300 N. W. 530. The decision of the commissioner is amply supported by the testimony and the trial court was right in affirming his decision.—Affirmed.

All JUSTICES concur.