EDWARD BOCIAN, claimant-appellant, v. ARMOUR & COMPANY, employer-appellee.

No. 48252.

(Reported in 56 N.W.2d 900)

FEBRUARY 10, 1953.

Louis S. Goldberg and P. L. Nymann, both of Sioux City, for appellant.

Stewart & Hatfield and Marvin J. Klass, all of Sioux City, for appellee.

SMITH, C. J.—On July 23, 1951, claimant, Edward Bocian (60), a "loin boner", filed application for an award of compensation under the Workmen's Compensation law against his employer, Armour & Company.

He alleged: He had, on March 12, 1951, sustained a personal injury arising out of and in the course of his employment, "resulting in incapacity"; that about September 1950 he "was assigned to the job of boning heavy loins requiring much greater exertion than his previous task of boning plates"; and that "this unusual strain * * * caused him to become totally and permanently disabled due to cardiac damage in which there was a sudden onset of coronary insufficiency (anginal syndrome) which was recurrent and resulted in myocardial infarction."

Defendant-employer specifically denied claimant had received any personal injury arising out of or in the course of his employment and averred that any disability he had suffered was not due to any personal injuries received by him while in its employ.

The deputy commissioner, after the evidence was in, said the question was whether an "employee in the usual course of his customary work has sustained an injury when a cardiac insufficiency develops to the point that he is unable to continue his employment or * * * to do any other type of physical labor. To interpret our workmen's compensation law in such a manner as to make it applicable in any case where the usual and natural functions of the bodily tissues become impaired by a degenerative process should be considered as a compensable injury * * * would * * * be going too far * * *."

He added: "It is accordingly made as a finding of fact that the employee has failed to sustain the burden of proof that he sustained an injury arising out of and in the course of his employment."

On review the commissioner approved the decision of his deputy and the district court also affirmed. The present appeal followed.

■ I. We of course start with the statutory admonition: "In the absence of fraud the findings of fact made by the industrial commissioner within his powers shall be conclusive." Section 86.29, Iowa Code, 1950. That statute is elaborated by the succeeding section (86.30) which provides the court may interfere "on one or more of the following grounds *and on no other* [emphasis supplied]: * * *. 3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence * * * to warrant the making of the order or decision." (We set out only the two that are material here.)

We have repeatedly and consistently construed these provisions as making the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inference fairly to be drawn from the facts. Taylor v. Horning, 240 Iowa 888, 890, 38 N.W.2d 105; Bruner v. Klassi, 241 Iowa 1007, 1011, 44 N.W.2d 366; Reynolds v. George & Hoyt, 230 Iowa 1267, 1271, 300 N.W. 530; Lindahl v. L. O. Boggs Co., 236 Iowa 296, 307, 18 N.W.2d 607, are some of the more recent cases. The real test is the sufficiency of the evidence to support the finding. Littell v. Lagomarcino Grupe Co., 235 Iowa 523, 530, 17 N.W.2d 120; Brewer v. Central Constr. Co., 241 Iowa 799, 801, 43 N.W.2d 131. The finding of the commissioner is on the same footing as a jury verdict. Kent v. Kent, 202 Iowa 1044, 1046, 208 N.W. 709; Taylor v. Horning, supra.

■ II. · The facts here are not in material dispute. The controversy concerns the inference to be drawn therefrom. Claimant had worked for Armour & Company for twenty years. Immediately prior to July or early August 1950, he had been boning plates, i.e., "the thin under portion of the forequarter of beef." (Webster's International Dictionary.)

About that time, after a brief layoff due to a minor finger injury, he began working on Army beef—on plates at first—but by reason of his seniority he "got on loins" when another man quit. He says the loins weighed 80 to 90 pounds whereas the plates weighed around 60 pounds. He says: "It was harder to work on the Army beef than it was on my job before. * * * I could bone at least one and a half cutter loins, one and a half to

two loins in the time it would take to bone one Army loin. The reason for the difference was that they were lighter and you could whirl them around faster, the tenderloin wasn't hard to pull out, the back was easier to mark." Other testimony explains that the loins were piled on the boner's table by another crew. He was not required to carry them but merely to pull the loin down off the pile to get at it.

He also testifies after he had been on the Army beef a month or three weeks he started feeling a little pain. "I thought I had a cold. The pain was right up in my chest and my nose was running. The pain come to me for the first time while I was at work. * * * That was several weeks after I started on the heavy Army beef." He describes the gradual increase of the pain symptoms through November to March 26, when he finally quit. He drew "sick leave" for a while but says, "When Armour's were told that I claimed my trouble was caused by heavy work * * * they just put a stop to my checks."

Enough has been set out to indicate the nature of the claim. There is much detail by exhibit and testimony tending to show the change in the character of the work preceding the appearance of symptoms of cardiac trouble. Also, there is testimony of medical men pro and con as to the nature and significance of the symptoms.

Dr. Gelfand, testifying for claimant, concludes: "I feel there is a definite causality between unusual strain and cardiac disability in this case." He says the reason for his opinion and conclusion are those stated in a seven-page exhibit, being a report which he had prepared, based on his examination of claimant. The last page states the doctor's conclusion at greater length and in language much too technical for judicial translation further than to say the doctor seems to reason that cause and effect are shown by the mere, perhaps adventitious, coincidence or sequence of time of the increase in work strain and the appearance of the symptoms.

On the other hand, Dr. Larimer, after examining claimant, made "a diagnosis of angina pectoris on the basis of arteriosclerosis." Testifying for defendant he says: "Physical labor may precipitate the attacks of pain, and does. It aggravates the situation so that the individual does develop heart pain. In my

opinion it doesn't cause the original onset of the disease. Any hard manual labor would aggravate a heart condition such as Mr. Bocian had. Arteriosclerosis is ordinarily a matter of rather long standing. Your arteries become diseased very gradually if the arteriosclerotic process is affecting the blood vessels of the heart, or the opening into those blood vessels, then it is a gradually developing process." Responding to a long hypothetical question (objected to by claimant's attorney) the witness says: "In my opinion the work itself did not cause his trouble. * * * I believe he would have had the same difficulty had he been active in any other similar type of hard work."

Dr. Grossman, also a witness for defendant, diagnosed claimant's disease as "angina pectoris due to coronary sclerosis" and expresses the opinion "Mr. Bocian is suffering from an arteriosclerosis which I believe is general, and it is a progressive thing which eventually would lead to this condition regardless of the fact that the loins were 20 or 30 pounds heavier than usual * * *. I feel that the coronary sclerosis would lead him to be suffering from anginal pains. In other words it is a chronic disease."

This witness also expressed the opinion "I don't feel that there was enough difference in the actual physical exertion to cause an aggravation of this condition."

We have quoted enough to establish the conflict in expert opinion which confronted the commissioner. It is not our province to weigh it. We can merely determine whether there is substantial, competent evidence to support his finding. The rule applies where there is a conflict in expert opinion. Reynolds v. George & Hoyt, supra, 230 Iowa at page 1271; Eveland v. Newell Constr. & Mach. Co., 236 Iowa 204, 17 N.W.2d 524.

Nor do we deem the difference of opinion shown in the record as to the cause of claimant's condition requires for its solution a conclusion of law as distinguished from a finding of fact. We realize the differentiation is not always easily made as suggested in Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254, quoted in Marley v. Orval P. Johnson & Co., 215 Iowa 151, 157, 244 N.W. 833, 85 A. L. R. 969 (cited by claimant). Under the record here the cause could only be ascertained by inference from the facts shown. That means, not a process of *legal* reasoning or conclusion, but one by which a fact is sought

to be established or deduced as a logical consequence from other facts. 43 C. J. S., Inference, page 373 et seq.

We are abidingly convinced here that the commissioner's decision involved a finding of fact and that there was sufficient competent evidence to sustain it. Had the trial court reversed the commissioner's decision it would have been error. Brown v. Rath Packing Co., 219 Iowa 9, 257 N.W. 411; Hughes v. Cudahy Packing Co., 192 Iowa 947, 185 N.W. 614.

III.   There is a suggestion in argument that the commissioner's decision erroneously assumes the claimant was required to show "some special incident or unusual occurrence" in order to merit compensation. Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N.W. 35, 94 A. L. R. 573, and Littell v. Lagomarcino, 235 Iowa 523, 17 N.W.2d 120, are cited.

We do not so interpret the commissioner's decision. True, it points out there is no proof of any such "special incident or unusual occurrence." But that is only a part of the finding. Such an incident or occurrence, if present, would have been very helpful to claimant's case and its absence was proper to mention. As said in the Almquist case (page 736): "A special incident or unusual occurrence is not material except to prove the personal injury."

But the actual finding is not based on the absence of a special incident. It points out that "the result of changes in the human body incident to the general processes of nature does not amount to a personal injury" and concludes "the cause of the condition complained of by claimant in the light of the testimony remains uncertain, problematic and conjectural." We must accept this conclusion.

IV.   One other matter commands our attention though not an issue and not argued. It concerns the matter of printing costs in this court. Our rule 345, R. C. P., provides: "The amount actually paid for printing * * * shall be certified by the attorney, and *if reasonable*, taxed in the supreme court as costs." (Emphasis supplied.)

Appellee's brief and argument with 27 pages shows a certified cost of $84, being $3.11 per page. Other briefs in the case certify a cost of only $1.00 per page, and the record, with num-

bered lines and numerous exhibit copies, only $1.25. No reason appears for the one excessive charge. On the other hand we cannot assume the smaller amount would be reasonable in all circumstances. Without meaning to fix a standard for all cases, we think the charge for appellee's brief should be reduced to $1.50 per page and it is so ordered.

The case is affirmed.—Affirmed.

All JUSTICES concur except LARSON, J., not sitting.