Lana ANDERSON, as Administrator
of the Estate of Norman
Anderson, Plaintiff,

v.

BRISTOL, INC. d/b/a Emerson Process
Management and/or d/b/a Remote Automated Solutions, Inc.; Irene Bielen
(individually and in her corporate capacity); and Craig Rossman (individually and in his corporate capacity),
Defendants.

No. 4:11–cv–418.

United States District Court,
S.D. Iowa,
Central Division.

March 16, 2012.

1130

Bradley M. Beaman, Gordon R. Fischer, Bradshaw Fowler Proctor & Fairgrave, Des Moines, IA, for Plaintiff.

Gene R. La Suer, Michael C. Richards, Deborah M. Tharnish, Davis Brown Koehn Shors & Roberts PC, Des Moines, IA, for Defendants.

## ORDER

**ROBERT W. PRATT,** District Judge.

On July 25, 2011, a petition captioned *"The Estate of Norman Anderson v. Emerson Process Management, Irene Bielen, Craig Rossman (individually and in their official and corporate capacity)"* was filed in the Iowa District Court in and for Marshall County. Clerk's No. 1.3. The defendants named in the state court petition removed the action to this Court on September 8, 2011. Clerk's No. 1. On September 15, 2011, the named defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the action must be dismissed for, among other things, lack of standing of "The Estate of Norman Anderson" to bring suit. Clerk's No. 2. On October 11, 2011, an Amended Complaint was filed, naming "Lana Anderson as Administrator of the Estate of Norman Anderson" as the operative named plaintiff. Clerk's No. 6. On October 19, 2011, the Court found the Motion to Dismiss the original state court petition moot.

On October 21, 2011, a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) was filed by Bristol, Inc. d/b/a Emerson Process Management and/or d/b/a Remote Automated Solutions, Inc. ("Emerson Process Management"), Irene Bielen ("Bielen"), and Craig Rossman ("Rossman") (collectively "Defendants"). Clerk's No. 9. Lana Anderson, as Administrator of the Estate of Norman Anderson ("Plaintiff") filed a resistance to the Motion on January 19, 2012. Clerk's No. 16. Defendants filed a reply on February 6, 2012. Clerk's No. 21. The matter is fully submitted.

## I. FACTUAL ALLEGATIONS OF THE COMPLAINT

Norman Anderson ("Anderson") began working for Emerson Process Management in Marshalltown, Iowa in 1990. Am. Compl. ¶ 11. He held a variety of positions and, in the relevant time period, was supervised by Rossman and Human Resources Manager Bielen. *Id.* ¶¶ 12–17. Anderson's last full year of employment with Defendant was 2008 and, during that year, he received a promotion and a raise. *Id.* ¶¶ 21–23. According to Plaintiff, Defendants had either constructive or actual knowledge that Anderson had severe mental health impairments and suffered from alcohol and prescription drug addictions, depression, a personality disorder, and severe and chronic insomnia. *Id.* ¶¶ 26–28.

On July 13, 2009, Anderson's mother was ill. *Id.* ¶ 30. Anderson emailed Rossman about his mother's situation on July 13, 2009, but did not receive a response.[1] *Id.* ¶¶ 33–34. Anderson's mother passed away on July 16, 2009. *Id.* ¶ 31. On July 17, 2009, Anderson again emailed Rossman, stating that his mother had passed away and services would likely be the following Tuesday. *Id.* ¶ 36. Rossman told Anderson to keep him updated on his requirements for leave. *Id.* ¶ 37. Anderson took bereavement leave from July 20–22, 2009. *Id.* ¶ 38. On July 23, 2009, Anderson performed his work from home. *Id.* ¶ 40. On July 26, 2009, Anderson was hospitalized for depression and severe mental health problems and was incapacitated until August 5, 2009. *Id.* ¶ 41. On July 30, 2009, Bielen wrote Anderson a letter stating that he had not reported for duty since July 24, 2009[2] and that his employment was terminated. *Id.* ¶ 46.

---

1. Though not clearly articulated in the Amended Complaint, it appears that Anderson did not work on July 13–17, 2009. *See* Am. Compl. ¶ 35 ("Mr. Anderson took time off from work ... to care for and be with his mom during her last days on this earth.").

2. Although not clear from the Complaint, it appears Anderson did report for work on July 24, 2009. *See* Am. Compl. ¶ 46 (Bielen stating in a letter that Anderson had not reported for work "since July 24").

According to Plaintiff, Defendants became aware of Anderson's hospitalization on July 27, 2009. *Id.* ¶ 42. Plaintiff also claims that Defendants were notified of Anderson's continued hospitalization on or before July 31, 2009. *Id.* ¶ 48. And, on or before August 4, 2009, Anderson spoke with Bielen, explained that he had been involuntarily hospitalized pursuant to a court order and was unable to call to report his absences, "and literally begged for reinstatement to his job." *Id.* ¶ 49–50. Defendants declined to reinstate Anderson to his position. *Id.* ¶ 52. At some point, McFarland Clinic provided a work status report dated August 7, 2009 to Defendants stating that Anderson was excused from work for July 26–30, 2009 "for illness" and that he was "unable to call in—did not have telephone access."[3] *Id.* ¶ 68. In another undated doctor's note, it was stated that Anderson "was in this hospital from 7/30/09 to 8/4/09" and would be able to return to work on August 5, 2009.[4] *Id.* ¶ 71. Anderson committed suicide on August 12, 2009. *Id.* ¶ 74.

Plaintiff alleges that Defendant terminated Plaintiff for being absent for three days, in direct violation of its Sick Leave Policy, which provided that, "to be eligible for salary continuance, each employee absent due to illness or injury *in excess* of three (3) days is required to submit a signed doctor's certificate to the Human Resources Department." *Id.* ¶ 56–58 (emphasis altered from original). Plaintiff further contends that, at the time of Anderson's termination, he was owed 7.5 days of vacation time. *Id.* ¶¶ 60–63. Plaintiff brings claims against Defendants for: 1) breach of written contract; 2) intentional interference with written contract; 3) fraud; 4) intentional infliction of emotional distress; 5) violation of the Iowa Civil Rights Act ("ICRA"); 6) wrongful discharge; 7) wrongful death; 8) unlawful interference, restraint, or denial of FMLA rights; 9) retaliation for exercising FMLA rights; and 10) disability discrimination in violation of the Americans with Disabilities Act ("ADA").

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In reviewing a complaint, a court must "accept as true all of the factual allegations contained in the complaint," and must draw "all reasonable inferences ... in favor of the plaintiff." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A viable complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires

---

**3.** Plaintiff alleges that "[o]ne or more Defendants had constructive knowledge of [the McFarland Clinic note] prior to Mr. Anderson's termination." Am. Compl. ¶ 69. However, the note was dated August 7, 2009—approximately a week *after* Anderson's termination.

**4.** Plaintiff again alleges that "[o]ne or more Defendants had actual knowledge" of this undated doctor's note "prior to Mr. Anderson's termination," despite the fact that the note only references dates either on or *after* Plaintiff's termination on July 30, 2009. *See* Am. Compl. ¶¶ 72–73.

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not, however, a 'probability requirement.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal,* 129 S.Ct. at 1949).

The Supreme Court, in *Iqbal,* described a "two-pronged approach" for evaluating complaints challenged under Rule 12(b)(6). 129 S.Ct. at 1949–50. First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Id.* at 1950.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

██ The "parsing" process requires careful examination of the plaintiff's allegations, however, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden,* 588 F.3d at 594. Indeed, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly re-

ject." *Id.* at 597 (internal quotations and citations omitted).

██ A court will "draw on its judicial experience and common sense" when determining whether a complaint states a plausible claim for relief. *Iqbal,* 129 S.Ct. at 1949. Thus, the Court may consider other, more likely explanations for the acts described in the complaint when determining whether the pleaded factual allegations give rise to a plausible entitlement to relief. *Id.* at 1950–51. But, the Court must always be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [a court] must also take account of [his or her] limited access to crucial information." *Braden,* 588 F.3d at 597.

## III. LAW AND ANALYSIS

### A. *Named Plaintiff*

██ Iowa Code § 611.20 provides that "[a]ll causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Iowa Code § 611.22 provides that any action "contemplated in section[ ] 611.20 ... may be brought ... by or against the legal representatives or successors in interest of the deceased." These statutes, known as survivor statutes, "preserve[ ] any claim a decedent has prior to death." *Estate of Dyer v. Krug,* 533 N.W.2d 221, 223 (Iowa 1995). Additionally, claims brought under the survival statutes are "expand[ed] upon death to include

damages resulting from wrongful death." *Id.* (noting that the "right to recover wrongful death damages vests exclusively in the estate representative").

■ According to Defendants, because the original Petition named the "Estate of Norman Anderson" as plaintiff, it is a legal nullity that did not operate to toll the applicable statutes of limitations in this case.[5] Defs.' Br. at 4–5. More specifically, Defendants contend that the "Estate of Norman Anderson" lacked standing to file the original Petition; the original Petition never became operative because it was filed by an entity without standing; the statute of limitations is not tolled by a legally null filing; the Amended Complaint is, thus, not actually an "Amendment" of any operative document; and the claims asserted in the Amended Complaint are, therefore, barred by the applicable statutes of limitations. *Id.* Anderson is alleged to have died on August 12, 2009. Am. Compl. ¶ 74. The original state law petition was filed on July 25, 2011—within any applicable two-year statute of limitations. *See* Clerk's No. 1.3. The Amended Complaint was filed on October 11, 2011— outside any applicable two-year statute of limitations. *See* Clerk's No. 6. Thus, if the Court accepts Defendants' argument and finds that the original state court filing was legally null, any of Plaintiff's claims governed by a two-year statute of limitations would be barred.

Interestingly, Defendants target their entire "legally null" argument towards Plaintiff's wrongful death claim, but make no assertions regarding the applicability of this argument toward any of Plaintiff's nine other causes of action. *See* Defs.' Br. at 4–5 (discussing wrongful death claims, but then concluding that "the Court should dismiss the *claims* in the Amended Complaint with prejudice as they are time-barred" (emphasis added)); *id.* at 12 (stating in conclusion section that the "Original Petition, which was filed by the 'Estate of Norman Anderson,' a party that did not have standing to sue, was a legal nullity which did not toll the statute of limitations and the action should be dismissed in its entirety pursuant to Rule 12(b)(6)"). As a preliminary matter, the Court notes that even if it accepted Defendants' argument, not all counts asserted in the Amended Complaint would be barred. For instance, while a wrongful death claim is, in fact, subject to a two-year statute of limitations, *see Estate of Dyer*, 533 N.W.2d at 222, Plaintiff's claim for breach of written contract is subject to a ten year statute of limitations. *See* Iowa Code § 614.1(5).

Regardless, while it contains some superficial appeal, the Court does not find Defendants' argument convincing. Federal Rule of Civil Procedure 17(a)(1) provides that an "action must be prosecuted in the name of the real party in interest."[6] Rule 17(a)(3) goes on to provide that the "court may not dismiss an action for fail-

5. Defendants cite several state appellate court decisions in support of this proposition. *See* Defs.' Br. at 5 (citing *Byrd v. Tiner*, 81 Ark. App. 366, 101 S.W.3d 887 (2003)); Defs.' Reply Br. at 3 (citing *Estate of James v. Peyton*, 277 Va. 443, 674 S.E.2d 864, 869 (2009) and *Levering v. Riverside Methodist Hosp.*, 2 Ohio App.3d 157, 441 N.E.2d 290 (1981)).

6. Because the present matter was removed on the basis of diversity jurisdiction, the Court looks to state substantive law, i.e., Iowa's

survivor statutes, to determine the "real party in interest." *Consul General of Republic of Indonesia v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir.2003); *Jaramillo v. Burkhart*, 999 F.2d 1241, 1246 (8th Cir.1993). Nonetheless, the procedural components of Rule 17 are still applicable. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, —— U.S. ——, 130 S.Ct. 1431, 1450, 176 L.Ed.2d 311 (2010). Despite this fact, neither party cites Rule 17 in their briefs on the present motion.

ure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Rule 17(a)(3) further provides that after ratification, joinder, or substitution, "the action proceeds as if it had been originally commenced by the real party in interest." Rule 17 "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Crowder v. Gordons Transports, Inc.*, 387 F.2d 413, 418 (8th Cir.1967). In this case, Lana Anderson is alleged to have been the Administrator of Anderson's estate prior to the time of filing the original petition. Clerk's No. 16–1 ¶ 63.[7] Her error in originally naming Anderson's "Estate" as plaintiff, rather than herself, was understandable and did not cause any discernible prejudice to Defendants. Moreover, Plaintiff amended the original petition promptly after the error was pointed out in the initial motion to dismiss. The Court finds that on the present record, this timely amendment "avoids a statute of limitations bar, because the action is treated as if brought in the name of the real party in interest, i.e., [Lana Anderson as Administrator of Anderson's Estate], at the time of commencement of the action on [July 25, 2011]," pursuant to Rule 17. *Estate of Butler ex rel. Butler v. Maharishi Univ. of Mgmt.*, 460 F.Supp.2d 1030, 1039 (S.D.Iowa 2006) (finding Rule 17 avoided the statute of limitations in a similar manner in a case where the real party in interest had not even yet been appointed administrator at the time of filing the original complaint).

### B. *Count III—Fraud Claim*

■ In Iowa, the elements of a claim for fraudulent misrepresentation or inducement include: 1) a representation; 2) falsity; 3) materiality; 4) scienter; 5) intent; 6) justifiable reliance; and 7) resulting injury or damage. *Whalen v. Connelly*, 545 N.W.2d 284, 294 (Iowa 1996). These elements must be established by clear and convincing evidence. *Id.* "In alleging fraud ... a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b)

■ Plaintiff alleges in Count III of the Amended Complaint that Defendants made promises to Anderson via the Sick Leave Policy that constitute either fraudulent misrepresentations or inducements. Am. Compl. ¶ 96. According to Plaintiff, these misrepresentations or inducements were material, were intended to deceive Anderson to get him to "accept greater and greater responsibility, longer and longer work hours, and to remain at Emerson Process Management," and were relied upon by Anderson in "staying at Emerson Process Management and working to the best of his estimable abilities." *Id.* ¶¶ 98–100.

The allegations of the Amended Complaint are wholly insufficient to state a viable claim for fraud under either Rule 9(b) or *Iqbal.* Plaintiff first argues that the Amended Complaint identifies the allegedly false representation as the Sick Leave Policy. Pl.'s Br. at 18. Plaintiff contends in her brief, however, that the alleged fraud occurred between July 17, 2009 and July 30, 2009 and, specifically, when Rossman told Anderson via email to keep him updated on Anderson's need to be absent to be with his mother. *Id.* at 16.

---

7. While Defendants point out that paragraph 63 of the original petition names Lana Anderson as "the sole executor" of Anderson's estate, the distinction between an administrator and an executor of an estate is merely whether the decedent died testate or intestate. *See* Iowa Code § 633.3(1), (16).

Nowhere in Plaintiff's Amended Complaint, however, is there a factual allegation that Rossman or anyone else ever referred to the Sick Leave Policy in any way in communicating with Anderson, let alone that Defendants knew the representations in the Sick Leave Policy were false or material to Anderson's decision to work more hours or remain at Emerson Process Management. Moreover, while Plaintiff points to emails by Rossman questioning Anderson's use of leave as supporting an allegation of some intent by Defendants not to abide by the Sick Leave Policy, *id.* at 21, nothing in these emails supports a plausible belief that Defendants intended to induce Anderson's reliance, or that Defendants knew or should have known that Anderson would rely on the Sick Leave Policy in deciding to "stay[ ] at Emerson Process Management and work[ ] to the best of his estimable abilities."[8] Am. Compl. ¶ 100. Defendants' Motion to Dismiss is, therefore, properly granted on Plaintiff's fraud claim.

### C. *Count VI—Wrongful Discharge*

 "Iowa is an at-will employment state. This means that, absent a valid contract of employment, 'the employment relationship is terminable by either party at any time, for any reason, or no reason at all.'" *Berry v. Liberty Holdings, Inc.,* 803 N.W.2d 106, 109 (Iowa 2011) (quoting *Fitzgerald v. Salsbury Chem., Inc.,* 613 N.W.2d 275, 280 (Iowa 2000) (additional citations and quotations omitted)). Because Anderson is not alleged to have been anything other than an at-will employee, Plaintiff must demonstrate the following

elements to sustain a claim for wrongful discharge in violation of public policy: 1) the existence of a clearly defined and well-recognized public policy that protected Anderson's activity; 2) that the public policy would be undermined by Anderson's discharge from employment; 3) that Anderson engaged in the protected activity and his protected conduct was the reason for his discharge; and 4) the employer had no overriding business justification for Anderson's discharge. *Id.* at 109–10 (citing *Lloyd v. Drake Univ.,* 686 N.W.2d 225, 228 (Iowa 2004)).

Plaintiff's theory of the wrongful discharge claim is that Defendants retaliated against Anderson because he requested and used leave for his mother's illness and death, requested clarification about available leave, and was unable to return to work due to a serious mental health condition. Am. Compl. ¶ 116. Plaintiff contends that "[f]iring an employee [for these reasons is] clearly against public policy under the laws of the State of Iowa." *Id.* ¶ 117. In her brief, Plaintiff more fully explicates the basis of the wrongful discharge claim, asserting that it is: 1) "against public policy to discharge an employee in retaliation for requesting FMLA leave," *see* Pl.'s Br. at 24, and 2) "it is against public policy to discharge an employee who is committed to involuntary hospitalization pursuant to a court order." *Id.* at 33.

 Regarding Plaintiff's first assertion that it is against public policy to discharge an employee in retaliation for re-

---

8. Plaintiff also argues that Rossman's emails about Anderson's leave usage for his mother's funeral demonstrate that Defendants "used [Anderson's] time away from work to attend his mother's funeral as an excuse to fire Mr. Anderson, all the time voiding any attempt to abide by the Sick Leave Policy and Procedure [Anderson] relied upon to secure his job." Pl.'s Br. at 21. Though not raised by either

party, an obvious problem with Plaintiff's fraud theory in this regard is that the Amended Complaint specifies that Anderson "took three days *bereavement leave*" for his mother's passing. Am. Compl. ¶ 38 (emphasis added). The Sick Leave Policy, however, is specifically alleged to apply to "periods of absence resulting *from the employee's sickness or injury.*" *Id.* ¶ 56 (emphasis added).

questing FMLA leave, Plaintiff's claim fails as a matter of law. Both federal and Iowa courts have recognized that Iowa's cause of action for wrongful discharge exists "for the purpose of protecting an employee against retaliation when a statutory right is conferred *but no statutory remedy is provided.*" *Lucht v. Encompass Corp.,* 491 F.Supp.2d 856, 866 (S.D.Iowa 2007) (emphasis added) (quoting *Muller v. Hotsy Corp.,* 917 F.Supp. 1389, 1420–21 (N.D.Iowa 1996)); *see Borschel v. City of Perry,* 512 N.W.2d 565 (Iowa 1994) (declining to permit a wrongful discharge claim where the policies or statutes allegedly violated provide a remedy). "The FMLA provides a statutory remedy for an employee whose employer interferes with [his] right to take family or medical leave." *Lucht,* 491 F.Supp.2d at 866 (citing 29 U.S.C. §§ 2615, 2617). Thus, "because [Plaintiff] has already pled an FMLA retaliation claim based on the same conduct and can therefore obtain relief on that basis," his Iowa wrongful discharge claim fails to the extent it is founded on the FMLA. *Id.; see also Bumgarner v. Grafco Indus., LP,* 581 F.Supp.2d 1052, 1059 (S.D.Iowa 2008) ("[T]he FMLA's remedy for retaliation preempts any state law wrongful-discharge claims.").[9]

■ Regarding Plaintiff's second assertion that it is against public policy to discharge an employee who is involuntarily hospitalized, Plaintiff's claim also fails as a matter of law. First, while Plaintiff argues in her Brief that Iowa Code §§ 125.81 and 229.6 support the wrongful discharge claim, Plaintiff's Amended Complaint mentions neither of these statutory sections. Indeed, Plaintiff does not even specifically allege that Anderson was dis-

charged *because* he was involuntarily hospitalized; rather she contends merely that Anderson was fired, in part, for "being unable to return to work due to serious mental health conditions." Am. Compl. ¶ 117. This factual allegation provides an insufficient basis to infer that Plaintiff intended to assert a wrongful discharge claim founded on violation of any public policy stated in Iowa Code §§ 125.81 and 229.6.

■ Moreover, even if Plaintiff properly pleaded the Iowa Code sections as the basis for her wrongful discharge claim, the claim would still fail. Iowa Code § 229.6 merely provides the mechanisms and procedures whereby a person can be involuntarily hospitalized, whereas Iowa Code § 125.81 provides the procedures for taking an individual who is a chronic substance abuser into immediate custody when there is a danger either to that individual or others. "Even if an employee identifies a statute as an alleged source of public policy, it does not necessarily follow that the statute supports a wrongful discharge claim." *Berry,* 803 N.W.2d at 110. "[M]any statutes simply regulate conduct between private individuals, or impose requirements whose fulfillment does not implicate fundamental public policy concerns." *Id.* at 110–11 (quoting *Jasper v. H. Nizam, Inc.,* 764 N.W.2d 751, 765 (Iowa 2009)). To qualify as the type of public policy supporting a wrongful discharge claim, the statute in question must either "expressly protect[ ] a specific employment activity from retaliation by the employer" or "clearly imply [that it] protects [a] specific employment activity … from employer retaliation." *Id.* at 111.

9. Plaintiff requests that the Court ignore prior Northern and Southern District of Iowa decisions on this issue in favor of *Lau v. Behr Heat Transfer Sys., Inc.,* a South Dakota federal district court decision applying South Dako-

ta—not Iowa—wrongful discharge law. *See* Pl.'s Br. at 31–32 (citing *Lau,* 150 F.Supp.2d 1017 (D.S.D.2001)). The Court declines Plaintiff's request in this regard.

The Iowa Code sections in question neither expressly nor impliedly protect any specific employment activity from retaliation. Rather, they concern themselves with ensuring the adequate safety and treatment of individuals who pose a serious danger to themselves or others. Such "policies" are not the types of "well recognized or clearly defined" policies that have been deemed sufficient to support a wrongful discharge in violation of public policy claim. *See Fitzgerald*, 613 N.W.2d at 282 (cautioning courts to be "careful to limit the tort action for wrongful discharge to cases involving only a well-recognized and clear public policy" because such limitations emphasize the "general adherence to the at-will employment doctrine and the need to carefully balance the competing interests of employee, employer, and society").

### D. *Count VII—Wrongful Death*

██ Plaintiff asserts in Count VII that Defendants are liable for Anderson's wrongful death because "Defendants' *tortious acts*, as described in the preceding counts and paragraphs, resulted in a mental condition which in turn resulted in [Anderson's] uncontrollable impulse to commit suicide, and/or which prevented [Anderson] from realizing the true nature of the act of suicide." Am. Compl. ¶ 121. Defendants argue that the wrongful death claim cannot survive Rule 12(b)(6) because the exclusive remedy for Anderson's death is in workers' compensation benefits. Defs. Br. at 9.

██ The Iowa workers' compensation statute provides:

The rights and remedies provided in this chapter ... on account of injury, occupational disease or occupational hearing loss for which benefits under this chapter ... are recoverable, shall be the exclusive and only rights and remedies of the employee ... the employee's ... personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury, occupational disease, or occupational hearing loss against any of the following:

1. Against the employee's employer.

2. Against any other employee of such employer, provided that such injury, occupational disease, or occupational hearing loss arises out of and in the course of such employment and is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.

Iowa Code § 85.20. Chapter 85 of the Iowa Code "provides a zone of protection in workers' compensation making an employer responsible for workers' compensation benefits only for any and all personal injuries sustained by an employee arising out of and in the course of employment." *Thayer v. State*, 653 N.W.2d 595, 599 (Iowa 2002) (quotations and citations omitted).

An injury "arises out of" employment if there is a causal connection between the employment and the injury. *Waterhouse* [*Water Conditioning, Inc. v. Waterhouse*], 561 N.W.2d [55,] 57 [ (Iowa 1997) ]. This inquiry focuses on the character and source of the risk giving rise to the injury and on the relationship of the risk to the nature of employment. *Meade v. Ries*, 642 N.W.2d 237, 243–44 (Iowa 2002) (citing *Bailey* [*v. Batchelder*], 576 N.W.2d [334,] 338 [ (Iowa 1998) ]). The injury arises in the "course of employment" when the injury and the employment coincide as to time, place, and circumstances. *Id.*

*Id.* at 599–600. The term "injury" "encompasses a mental injury as well as a physical injury." *Dunlavey v. Economy Fire & Cas. Co.*, 526 N.W.2d 845, 851 (Iowa 1995). In a case of mental injury

without an accompanying physical injury, a claimant must demonstrate that "the mental injury was caused by stress of a greater magnitude than the day-to-day stress experienced by workers in the same or similar jobs." *Humboldt Cmty. Sch. v. Fleming*, 603 N.W.2d 759, 763 (Iowa 1999) (citing *Dunlavey*, 526 N.W.2d at 853–54). Suicide can fall within the provisions of Iowa's workers' compensation laws when there is proof that "but for an employment-related mental injury—however experienced—the employee would not have committed suicide." *Id.* at 763 (quoting *Kostelac v. Feldman's Inc.*, 497 N.W.2d 853, 857 (Iowa 1993) ("[W]e now join the majority of jurisdictions who permit recovery of workers' compensation benefits upon proof of a chain of causation directly linking an employment injury to a worker's 'loss of normal judgment and domination by a disturbance of the mind, causing the suicide.' ")).

Plaintiff argues that the wrongful death claim in this action does not fall within the exclusivity provision of § 85.20 because "the wrongful death cause of action did not arise *while* [Anderson] was acting within the scope of his employment nor did it arise out of and in the course of his employment; the actions arose *after* he was terminated from his employment with Defendants." Pl.'s Br. at 39. More specifically, Plaintiff urges that none of the mental health or substance abuse issues Anderson experienced during his employment were caused by Defendants; rather "the mental anguish of [Anderson] being fired was realized after his employment ended, thereby pulling the wrongful death outside the realm of compensable injuries for workers' compensation." *Id.* at 41.

The pivotal question in the inquiry is whether Defendants' act of terminating Plaintiff "arose out of and in the course of employment." Though Defendants point out that the "act of termination" is deemed in the context of wrongful termination and discrimination claims to "occur[ ] while a person is employed, not after," *see* Defs. Br. at 12, the issue appears to be one of first impression under Iowa's workers' compensation law. Courts that have addressed the issue have reached differing conclusions on whether a termination does, in fact, "arise out of and in the course of employment." *Compare Vieira v. Wal-Mart Stores, Inc.*, No. 00–272–P–H, 2000 WL 1840081, at *2 (D.Me. Dec. 15, 2000) ("Termination of employment arises out of and in the course of employment; it could not arise out of anything else."); *Shoemaker v. Myers*, 52 Cal.3d 1, 18, 20, 276 Cal.Rptr. 303, 801 P.2d 1054 (Cal.1990) (noting that demotion, transfer, and discipline are included within the ambit of workers' compensation and that "[n]onconsensual termination of an employment relationship is indistinguishable from [such actions] and must therefore also be considered a normal and inherent part of employment"); and *Thorn v. Radix Corp.*, No. 89–C–727W, 1990 WL 364774, at *2 (D.Utah Oct. 30, 1990) ("Because the act of wrongfully terminating an employee, the basis of plaintiff's claim here, arises out of and in the course of employment, plaintiff's claim is compensable under the Workers' Compensation Act, and thus barred by the Act's exclusive remedy provision.") *with Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051 (8th Cir.1993) (stating without explanation that a plaintiff's emotional distress injuries were not preempted by the Missouri workers' compensation act because "her unemployment, as a result of a discriminatory discharge, caused her distress"); and *Patterson v. Dayton Freight Lines, Inc.*, No. 4:07–cv–1225, 2007 WL 4640520, at *4 (E.D.Mo. Dec. 31, 2007) (citing *Kientzy* and reaching an identical conclusion); *Fulco v. Norwich Roman Catholic Diocesan Corp.*, 27 Conn. App. 800, 609 A.2d 1034, 1038 (1992) (stat-

ing that "[i]t would unduly strain the language of the statute for us to conclude that termination of employment creates a job related injury" and that "[c]learly, the process of being fired is not a duty of employment").[10]

In light of the Eighth Circuit's *Kientzy* decision, the lack of clarity on the legal question of whether the act of termination arises out of and in the course of employment, and the Court's obligation to construe the Amended Complaint in the light most favorable to Plaintiff, the Court declines to hold Plaintiff's wrongful death claim preempted by Iowa's workers' compensation statute at this juncture. Defendants, however, remain free to seek dismissal or summary judgment on Plaintiff's wrongful death claim on the basis of the workers' compensation statute or on any other basis at a future point in the litigation when the factual contours of the claim are more fully developed.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss (Clerk's No. 21) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is granted with respect to Counts III and VI of the Amended Complaint, and denied as to all remaining counts.

IT IS SO ORDERED.

10. In *Fulco*, the court stated that "the earliest time that the plaintiff's injury could have arisen was immediately after his discharge. It is impossible for the injury to have arisen during the period of his employment because his employment necessarily was terminated before the alleged injury arose." *Fulco*, 609 A.2d at 1038. This is noteworthy because under Iowa law, an employer is responsible for injuries that are caused by an action occurring during employment, but that do not manifest until after employment has concluded. *E.g., Eveland v. Newell Const. & Machinery Co.*, 236 Iowa 204, 17 N.W.2d 524 (1945); *Oldham v. Scofield & Welch*, 222 Iowa 764, 266 N.W. 480, 482 (1936).